[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-10009

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 16, 2005**
**THOMAS K. KAHN**
**CLERK**

Agency No. A79-091-876

FRED NREKA,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 16, 2005)

Before BARKETT, HILL and FARRIS[*], Circuit Judges.

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

BARKETT, Circuit Judge:

Fred Nreka, a native and citizen of Albania who sought admission to the United States under the Visa Waiver Program ("VWP"), petitions for review of the Board of Immigration Appeals' ("BIA") order adopting and affirming the immigration judge's ("IJ") decision to deny him asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). For the reasons discussed below, we conclude that we have jurisdiction to review a BIA determination regarding asylum and withholding of removal of a VWP applicant. That being so, however, on the merits of Nreka's claims on appeal, we affirm the BIA's and IJ's decisions denying asylum-related relief.

## I. Relevant Facts and Procedural History

On July 7, 2001, Nreka, a native and citizen of Albania, arrived in the United States and attempted to gain entry with a fraudulent passport. Nreka was detained and the INS[1] initiated immigration proceedings by filing a Notice of Referral to an IJ (Form I-863). Because he attempted to enter the United States with a Swedish

---

[1]The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was signed into law on November 25, 2002. The Act created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department. Because this case was initiated while the INS was still in existence, we refer to the agency as the INS.

passport, and Sweden is a participant country of the Visa Waiver Program, see

INA § 217(a), 8 U.S.C. § 1187(a), Nreka was identified as a "VWP applicant."[2]

Nreka requested asylum and was therefore placed in so-called "asylum only

proceedings," pursuant to 8 C.F.R. §§ 217.4 and 208.2(c). While awaiting his

hearing before the IJ, he was paroled into the United States. See 8 U.S.C. §

1182(d)(5)(A).[3]

In his application for asylum and his testimony before the IJ, Nreka claimed

that the Albanian government, which represented the Socialist Party ("SP"),

persecuted him based upon his political opinion and membership in the Democratic

Party ("DP"). Nreka began as a DP sympathizer in 1997, assisting the party by

providing security for the DP headquarters. He became a party member in 1998,

and continued participation by organizing events such as meetings, protests and

demonstrations. Nreka stated that he supported the DP because, unlike the SP, the

---

[2] As explained infra, under the VWP, the Attorney General is permitted to allow aliens from certain countries to enter the United Sates for up to 90 days without a visa as nonimmigrant visitors. See 8 U.S.C. § 1187(a); 8 C.F.R. § 217 et seq.

Nreka's notice of referral form classifies him as a "VWPP" applicant, referring to the "Visa Waiver Pilot Program." Congress amended the statute in 2000 to make the program permanent. See Visa Waiver Permanent Program Act, Pub. L. 106-396, 114 Stat. 1637 (2000). The program is now referred to as the "Visa Waiver Program." See 8 U.S.C. § 1187.

[3] A grant of temporary parole is not considered admission to the United States. See 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of [any alien applying for admission to the U.S.] alien shall not be regarded as an admission of the alien . . . ."); Kwai Fun Wong v. United States, 373 F.3d 952, 958 n.8 (9th Cir. 2004).

3

DP did not detain and mistreat the people and had recognized human rights while it was in power.

Nreka alleged that after he joined the party, the police – as a result of his being on a list proposed by the president of Albania – started persecuting him and his family. He described several incidents of persecution. First, Nreka claimed that he was beaten by a group of eight to ten policemen while on his way home from a DP meeting in June of 1998. Nreka stated that the policemen stopped him, telling him that they wanted to clarify some things about the DP, and then took him to a beach and beat him up with batons, rubber sticks, and the barrel of a gun. The officers allegedly broke Nreka's leg and left him unconscious, and he woke up in Shkoder hospital. Nreka told the IJ that he paid to be transferred to a military hospital because he did not trust the doctors at Shkoder hospital.

Second, Nreka testified that on several occasions in 1998, the police went to his family's house to search for him. They allegedly asked about his whereabouts, shoved his parents to the ground, and hit his brother and wife.

Third, Nreka stated that he was arrested and detained for twenty-four hours by the police in October of 2000 while on his way home from the DP's headquarters in Shkoder. A group of police officers stopped him on the road and told him to come with them "to clarify some things." He alleges that the officers

4

took him to a cell and threatened that if he did not cease his DP activities, they would do to him what they did in June of 1998 when they broke his leg, and would "destroy, or burn" his family. After he was released uninjured, Nreka stayed at his parents' house for two days, and then moved from place to place, until he fled to the United States.

On cross-examination, Nreka conceded that between June of 1998 and October of 2000, he had also been detained by the police approximately seven other times, for one to two hours each. He explained that on these occasions, he was one of several people randomly stopped and searched by the police because they were suspected of possessing illegal weapons.

Some of Nreka's family continues to live in Albania, including his mother, who has received a government pension for the past five or six years; his wife, who could not afford the trip to the United States; and two brothers, one of whom Nreka says has also experienced problems because of his affiliation with the DP.

In addition to Nreka's testimony about the above incidents, Nreka presented the following documentary evidence: (1) an identification card showing his membership in the DP; (2) a letter from the DP, stating that Nreka had protected democratic institutions from being burned down during a 1997 communist rebellion and that he had been "prosecuted, threatened[,] and ill-treated from the

5

ex-security of the communist state," which posed a serious threat to his life; and (3) a letter from Shkoder hospital, stating that he stayed in the hospital from June 17, 1998, to June 19, 1998, and then transferred to the military hospital.[4]

The IJ denied Nreka's application for asylum and withholding of removal under the INA and the CAT. After summarizing the testimonial and documentary evidence presented by Nreka, and explaining the standard for establishing a well-founded fear of future persecution, the IJ stated that "much of the evidence that has

---

[4]Nreka also submitted the U.S. Department of State's "2000 Country Report on Human Rights Practices in Albania" ("2000 Country Report"), which stated, inter alia, that (1) Albania is a republic with a multiparty parliament, prime minister, and president who was elected by parliament; (2) the SP won 121 of 155 seats in parliament in the 1997 Albanian elections, which occurred "after a 5-month period of chaos and anarchy due to the collapse of [investment] pyramid schemes"; (3) one of the biggest problems with internal security was untrained and unreliable police officers; (4) the government generally respected human rights, but there were still numerous, serious problems; (5) despite the DP's credible claims that its members were harassed and beaten by the government, there were no confirmed cases of political killings by the government; (6) although the constitution stipulated against torture and brutal treatment, police officers often beat and mistreated suspects and prisoners; (7) more than 190 police officers were fired in 2000 because of "incompetence, lack of discipline, or violations of the law"; (8) the police continued to arrest and detain people arbitrarily; and (9) Albanians who fled were welcomed back and could have their citizenship restored.

Among other documents, the INS submitted the Bureau of Democracy, Human Rights and Labor's May 2001 report entitled "Albania: Profile of Asylum Claims and Country Conditions" ("2001 Profile"), which stated that (1) the collapse of financial pyramid schemes in 1997 caused many Albanians to lose their life savings and provoked fighting and disorder in the country; (2) during 1997, 700,000 firearms were looted from military depots; and (3) order was restored with the formation of a government of national reconciliation, and in June of 1997 national elections brought the SP to power. The 2001 Profile further stated that "[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds," and that "[f]ar more prevalent is organized and amateur crime, exacerbated by the widespread availability of firearms, high unemployment and poverty, continued corruption among the police and a culture of blood feud that is wholly independent of political activity." The Profile stated that the SP currently led a coalition government and that "all political parties have been active in most of the country without a pattern of mistreatment . . . ."

been submitted, as well as the testimony, tends to be not substantial to the extent that it would reach the standards which would need to be achieved to satisfy the burden of proof relating to political asylum." He observed that Nreka's testimony was "general in nature and limited to details that are apparently readily available in the [U.S. Department of State's] 2000 Country Report [on Human Rights Practices in Albania] or other general documents relating to Albania" and noted his concerns about Nreka's credibility. He observed that Nreka's mother continued to receive her government pension and stated his belief that Nreka's family would have been affected if the government sought to harm Nreka. The IJ found it "a little bit straining of credulity" that the president had an agenda that was specifically adverse to Nreka, considering that Nreka was not heavily involved in the struggle between the SP and the DP. Lastly, the IJ found "troubling" the fact that Nreka sought a transfer to the military hospital instead of a general hospital since he claimed to fear the government. The IJ ultimately found "the respondent's arrival in the country by use of fraud, his testimony, and the evidence presented to be insufficient to meet his burden of proof, and this Court finds that his application for political asylum, withholding of removal and relief pursuant to the Torture

Convention should be denied, and are hereby denied." The IJ did not expressly order Nreka removed.[5]

Nreka appealed to the BIA, arguing that the IJ erred in denying him asylum, withholding of removal under the INA, and CAT relief. The BIA adopted and affirmed the IJ's determination, agreed that Nreka's claim was "not credible," and dismissed Nreka's appeal. Nreka timely filed this petition for review.

### III. Discussion

### A. Jurisdiction

The first question presented is whether, under the INA as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), we have jurisdiction over a

---

[5]This is because Nreka was referred to the IJ for asylum only proceedings, where, according to agency regulation, the scope of the proceeding is limited exclusively to asylum-related relief, such that the alien cannot contest admissibility, removability, or raise claims concerning his eligibility for other forms of relief. See 8 C.F.R. § 208.2(c)(3)(i) (asylum-only procedures for VWP applicants). It is not clear, however, that 8 C.F.R. § 208.2(c)(3)(i) is a reasonable interpretation of 8 U.S.C. § 1187(b), given that the waiver of rights described in the statute is a prerequisite for admission under the VWP, and Nreka was never so admitted. Although we do not face this issue now, it seems unlikely that the INS can reject Nreka's admission under the VWP, but nevertheless hold Nreka to the VWP waiver as if he had been admitted. It also seems unlikely that such waiver can justify proceedings different from the proceedings established by the INA for aliens at the border who arrive with fraudulent documents but seek asylum. No court has yet addressed this issue. In every appellate case dealing with VWP waivers, the alien was in fact admitted under the program, but after violating its terms (e.g., overstaying the 90 days), sought relief from subsequent removal proceedings. See Handa v. Clark , 401 F.3d 1129, 1132 (9th Cir. 2005); Wigglesworth v. INS, 319 F.3d 951, 954 (7th Cir. 2003); Itaeva v. INS, 314 F.3d 1238, 1239 (10th Cir. 2003); Auguste v. Reno, 152 F.3d 1325, 1326 (11th Cir. 1998); Nose v. Att'y Gen., 993 F.2d 75, 77 (5th Cir. 1993).

petition for review of a BIA order that denies asylum and withholding of removal but does not expressly order removal of a VWP applicant in "asylum only proceedings" pursuant to INA § 217(a), 8 U.S.C. § 1187(a) and 8 C.F.R. §§ 217.4 and 208.2.[6]

INA § 242, 8 U.S.C. § 1252, is the jurisdictional basis for immigration determinations post-IIRIRA.  It states:

> (a) Applicable provisions
>> (1) General orders of removal
>>
>> Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section . . .
>>
>> (2) Matters not subject to judicial review

---

[6]In this case, the Court raised the question sua sponte, asking the parties to brief the following jurisdictional question:

> Whether this Court has jurisdiction under 8 U.S.C. § 1252(a)(1), (a)(2)(A) (which governs "final order[s] of removal"), or otherwise to consider a petition for review filed by an applicant for the Visa Waiver Program ("VWP"), INA § 217, 8 U.S.C. § 1187 and 8 C.F.R. § 217 et seq., of the Board of Immigration Appeals's affirmance of an Immigration Judge's opinion, which was issued pursuant to "asylum only proceedings" under 8 C.F.R. § 217, 8 C.F.R. § 208.2(c), and which denied asylum and withholding of removal without expressly ordering the alien's removal?  See Itaeva v. INS, 314 F.3d 1238 (10th Cir. 2003) (persuasive authority); In Re Kanagasundram, 22 I. & N. Dec. 963 (BIA 1993).

(Footnote omitted).  See Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."); Galindo-Del Valle v. Att'y General, 213 F.3d 594, 599 n.2 (11th Cir. 2000).  Both the Attorney General and the appellant take the position that we have jurisdiction under the circumstances presented here.

. . .

(B) Denials of discretionary relief

Notwithstanding any other provision of law, no court shall have jurisdiction to review – . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252.  In relevant part, 8 U.S.C. § 1158(a)(1) permits "[a]ny alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, [to] apply for asylum . . . ."

Nreka applied for asylum and withholding of removal under 8 U.S.C. § 1158(a) and the CAT and now appeals the BIA's (and IJ's where applicable) final determination denying such relief.  We have jurisdiction to review his claim under the jurisdictional grant in § 1252(a)(1).  We agree with the INS's position that, assuming that the "final order of removal language" of § 1252(a)(1) acts as a condition precedent to the grant of jurisdiction throughout the remainder of § 1252, the denial of asylum and withholding of removal in Nreka's case constitutes a "final order of removal" for jurisdictional purposes.  See Del Pilar v. Att'y Gen., 326 F.3d 1154, 1156-57 (11th Cir. 2003) (holding that a BIA decision reversing the IJ's grant of a waiver of inadmissibility under INA § 212(c) was a final order of removal because there was nothing left for Del Pilar to appeal); Perkovic v. INS, 33 F.3d 615, 618-19 (6th Cir.1994) (holding that a BIA order reversing an IJ's

10

grant of asylum and remanding the case was a "final order of deportation" and noting that it was not "aware of [any] authority for the proposition that a [BIA] order rejecting an asylum application is not a final order unless a formal order of deportation has already been issued"); cf. Khup v. Ashcroft, 376 F.3d 898, 902 (9th Cir. 2004) (exercising jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) over a petition for review of the denial of relief from removal by an alien placed in proceedings for overstaying his period of lawful admission under the VWP). The denial of an asylum application in a VWP proceeding is so closely tied to the removal of the alien that it can be deemed – in conjunction with the referral to the immigration judge – as a final order of removal, subject to § 1252(a)(1).[7]

We do not find any significant distinction in Nreka's VWP status. Our interpretation places an unsuccessful VWP applicant seeking asylum in the same position as other aliens who arrive at the border without valid entry documents and whose asylum claims are referred to the IJ. See, e.g., D-Muhumed v. Att'y Gen., 388 F.3d 814, 815-816 (11th Cir. 2004) (reviewing denial of asylum and withholding of removal of inadmissible alien stopped at the border with fraudulent

_____

[7]Moreover, § 1252(a)(2)(B)(ii) – which, unlike 1252(a)(1), contains no language that could be interpreted as requiring that the petitioner be subject to a "final order of removal" – may itself provide a grant of jurisdiction to review any denial of asylum. See Gedeon v. Att'y Gen., 03-15785 at *5-6 (11th Cir. Nov. 5, 2004) (unpublished) ("First, this Court's jurisdiction to entertain [an unsuccessful VWP applicant's] petition for review of the denial of his asylum application is found in 8 U.S.C. § 1252(a)(2)(B)(ii).") (citing Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003), and Tsevegmid v. Ashcroft, 336 F.3d 1231, 1234 (10th Cir. 2003)).

11

entry documents); see also Asylum Seekers in Expedited Removal, Report of the

U.S. Comm'n on Int'l Religious Freedom, at 52-53 (describing judicial review

available to inadmissible aliens whose asylum applications are referred to an IJ); 8

U.S.C. § 1225(b) (describing referral to IJ of aliens from expedited removal

proceedings to regular removal proceedings). There is nothing in the VWP statute

to indicate that unsuccessful VWP applicants should be treated differently than any

other inadmissible alien stopped at the border who has established sufficient

credible fear of persecution to be referred to an IJ for a hearing.[8]

### B. Asylum and Withholding of Removal

This Court reviews only the decision of the BIA, "except to the extent that it

expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284

(11th Cir. 2001). Because the BIA in this case "adopted and affirmed" the IJ's

decision, this Court will review the IJ's analysis as if it were the BIA's. Id.

To the extent that the BIA's (or IJ's) decision was based on a legal

determination, review is de novo. See Mohammed v. Ashcroft, 261 F.3d 1244,

1247-48 (11th Cir. 2001). The IJ's factual determination that an alien is not

---

[8]Our jurisdiction over the denial of asylum extends to Nreka's asylum-related claims of withholding of removal under the INA and CAT. See 8 C.F.R. 208.2(c)(3)(i) (limiting the scope of review in asylum-only proceedings to "a determination of whether the alien is eligible for asylum or withholding or deferral of removal, and whether asylum shall be granted in the exercise of discretion.").

entitled to asylum must be upheld if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Antipova v. Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004) (internal citation and quotation marks omitted).

In this case, at the end of the discussion of the evidence, the IJ concluded as follows:

> [T]his Court finds the respondent's arrival in the country by use of fraud, his testimony, and the evidence presented to be insufficient to meet his burden of proof, and this Court finds that his application for political asylum, withholding of removal and relief pursuant to the Torture Convention should be denied and are hereby denied.

IJ Order at 11.

We note that Nreka did not present any false documents to the IJ in support of his claim. Rather, the IJ's reference to fraud related to Nreka's use of the false Swedish passport to enter the United States. We initially observe in this regard that documents to facilitate travel or gain entry into the United States cannot in and of themselves be used as the basis to deny asylum. As recognized by the BIA in In re O-D, 21 I. & N. Dec. 1079 (BIA 1998), "there may be reasons, fully consistent with the claim of asylum, that will cause a person to possess false documents, such as the creation and use of a false document to escape persecution by facilitating travel." Id. at 1083; accord Akinmade v. INS, 196 F.3d 951, 956 (9th Cir. 1999)

13

(asylum applicant's use of fraudulent documents to gain entry into the United States "cannot serve as a basis for an adverse credibility determination"); see also id. (making comparison to the distinction between false statements that "involve [] the heart of the asylum claim," which affect credibility, and false statements that are only "incidental" to the claim, which do not).

Nevertheless, we affirm because substantial evidence supports the IJ's conclusion that Nreka did not meet his burden of proof of establishing that he is a "refugee" as defined under the INA. See 8 U.S.C. § 1101(a)(42)(A); INS v. Cardoza-Fonseca, 480 U.S. 421, 427-28 (1987). In light of the IJ's express concerns[9] about the credibility of Nreka's testimony on key elements of the claim, and Nreka's failure to rebut these with sufficient corroborating evidence and explanation, it cannot be said that the evidence compels the conclusion that he suffered past persecution on account of his political opinion in the DP or that he has a "well-founded fear" that his political opinion will cause future persecution. INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992); Sepulveda v. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005).

Substantial evidence also supports the IJ's determination that Nreka is not entitled to withholding of removal under the INA or CAT. Because Nreka has

---

[9]We note, however, that the IJ could certainly have been clearer as to whether he was in fact making an adverse credibility determination.

14

failed to establish eligibility for asylum, he has likewise failed to establish eligibility for these other forms of relief.  See Al Najjar, 257 F.3d at 1292-93 (when "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation") (internal quotation marks omitted).

Accordingly, because we affirm the IJ's decision on all claims, Nreka's petition for review is DENIED.