[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-12393
Non-Argument Calendar

_____

Agency No. A79-448-055

RUDINA ZHULEKU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 29, 2005)

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Rudina Zhuleku, an alien and Albanian citizen who applied for asylum and

withholding of removal, petitions for review of the denial of her application. Because substantial evidence supports the decision of the Immigration Judge, we deny Zhuleku's petition.

## I. BACKGROUND

Zhuleku is an Albanian citizen who arrived in the United States with a false Norwegian passport in May 2002. After the government denied her application for admission under the Visa Waiver Pilot Program, Zhuleku applied for asylum, withholding of removal, and relief under the Convention Against Torture. The IJ denied Zhuleku's application.

Zhuleku alleged that she had suffered several incidents of harassment, abuse, and criminal assault. Zhuleku described herself as a leader and active member in the opposition Democratic Party. She alleged that government police interrupted a Democratic Party meeting in November 1998 and mistreated her and others. She also stated that, as she was leaving the meeting that night, a car drove up and an occupant told Zhuleku to "leave the group and disappear" and that "we are going to cut your skin off, just like cattle." For several days after these events, Zhuleku received phone calls from anonymous callers who threatened to arrest and kill her.

Zhuleku also alleged that in May 2001 her car was stopped by four masked persons dressed as police who ordered Zhuleku and her three companions to exit the car, searched the car and found a box of literature of the Democratic Party,

2

threw the box of literature on the ground, and then beat Zhuleku and her companions. Three days later, she received a letter in which "the gangsters of the Socialist Party" threatened to burn Zhuleku and her family if she did not "separate" herself from the Youth Forum of the Democratic Party. Zhuleku also alleged that, on the morning after the June 2001 elections, she was punched and robbed by two men as she was leaving her home. Zhuleku also alleged that she had been kidnapped and raped after leaving a meeting of the Youth Forum in February 2002, but on cross-examination Zhuleku admitted she had not been raped.

Zhuleku left Albania on May 12, 2002. She spent three days each in Italy, France, and Guadeloupe but did not seek asylum or refugee status in any of those places. Zhuleku then entered the United States at the Miami International Airport on May 21 and was denied admission under the Visa Waiver Pilot Program. Zhuleku filed an application for asylum and withholding of removal in October 2002.

In addition to the statements she made in her application and her testimony at the hearing, Zhuleku offered a variety of documentary evidence, including two letters from the alleged leader of the Democratic Party and medical reports describing Zhuleku's condition after the attacks on her. In response, the government, in addition to cross-examining Zhuleku at the asylum hearing, offered a variety of reports and studies, including the 2001 State Department Profile of

Asylum Claims and Country Conditions for Albania. After conducting an asylum hearing, the IJ found that Zhuleku's testimony was not credible and that she had failed to satisfy her burden of proof. The BIA affirmed the decision of the IJ without opinion.

## II. STANDARD OF REVIEW

When the BIA affirms a decision of the IJ without opinion, we review the decision of the IJ. Nreka v. U.S. Atty. Gen., 408 F.3d 1361, 1368 (11th Cir. 2005) (citing Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001)). We review legal determinations de novo. Id. at 1361. We review factual determinations, including determinations of credibility, under the substantial evidence standard. Forgue v. U.S. Atty. Gen., 401 F.3d 1282, 1286 (11th Cir. 2005); D-Muhumed v. U.S. Atty. Gen., 388 F.3d 814, 818 (11th Cir. 2004). The "IJ must offer specific, cogent reasons for an adverse credibility finding," Forgue, 401 F.3d at 1287, but "this court may not substitute its judgment for that of the [IJ] with respect to credibility findings." D-Muhumed, 388 F.3d at 818. Findings of fact, including credibility findings, "may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. __, 125 S. Ct. 2245 (2005); Forgue, 401 F.3d at 1287.

4

## III. DISCUSSION

To be eligible for asylum, an alien must qualify as a refugee under section 208(a)(1) of the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1)(A). To qualify as a refugee, an alien must prove either past persecution or a well-founded fear of future persecution on account of the her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); see Al Najjar, 257 F.3d at 1284. To prove past persecution, the alien must prove that she was persecuted on account of one of the statutorily protected grounds. See, e.g., Sepulveda v. U.S. Atty. Gen., 401 F.3d 1226, 1230-1231 (11th Cir. 2005). To prove a well-founded fear of future persecution, the alien must present "specific, detailed facts" that support her fear that she will be "singled out" on account of a statutorily protected ground. Al Najjar, 257 F.3d at 1287 (internal quotation and emphasis omitted).

The IJ offered specific and cogent reasons in support of its finding that Zhuleku was not credible. In her application and at the hearing, Zhuleku unequivocally stated that she had been raped, but on cross-examination Zhuleku admitted that her attackers had not had sex with her. Zhuleku explained her view that "as a female and being 22 years old, raping and violating my rights as a person into [sic] doesn't just mean sexual contact. It also means touching me in the places where I shouldn't be. Threaten me, beating me, that's also rape as far as I'm

5

concerned." The IJ rejected this testimony and "respectfully [found] that the term 'rape' has a universal meaning. The term 'rape,' without referring to any dictionary definition, generally connotes that unconsensual and forced intercourse was inflicted upon an individual." The IJ found that Zhuleku had "manipulated the term 'rape' to provide sympathetic facts to her case."

The IJ also observed other inconsistencies in Zhuleku's testimony: (1) Zhuleku stated in her application that she was attacked in June 2001, but failed to provide detailed testimony about the incident at her asylum hearing; (2) Zhuleku testified that she obtained a birth certificate in November 2001 because she needed it to apply to university, but elsewhere testified that she applied to university in June 2000 and June 2001; and (3) Zhuleku failed to seek refugee protection or apply for political asylum when she was interviewed by officials of the U.S. Embassy in Albania in December 2001 regarding her application for a non-immigrant visitor's visa. The inconsistencies in Zhuleku's testimony, especially her false allegation of rape, were specific and cogent reasons for the IJ to make an adverse credibility finding.

Substantial evidence also supports the finding of the IJ that Zhuleku's other evidence was unpersuasive. See Forgue, 401 F.3d at 1287. The IJ found several inconsistencies in the two letters from a D. Haznedari, who allegedly was the head of the Democratic Party in Albania. The IJ found that both letters lacked indicia of

6

reliability because they were not on letterhead and were entirely typewritten except for certain stamps affixed to them. The IJ observed that Zhuleku did not explain why one letter stated that Zhuleku had been a member of the Youth Forum since January 1997 while the other letter stated that Zhuleku had been a member of the Democratic Party since February 1997. Because the letters bore the same date, August 27, 2002, the IJ questioned why Haznedari would execute two separate letters.

The Haznedari letters were not the only documents the IJ considered to be suspicious. The IJ was troubled by the medical reports regarding Zhuleku's alleged beating and rape, which apparently were created at the request of a solicitor referred to as OPGJ. The IJ found the reference to the OPGJ to be inconsistent with Zhuleku's allegation that she suffered persecution by the Albanian government or members of the Socialist Party because it suggested that there had been police and prosecutorial involvement in the crimes that Zhuleku allegedly suffered.

The IJ also found that countervailing evidence offered by the government further undermined Zhuleku's application for asylum. The 2001 State Department Profile of Asylum Claims and Country Conditions for Albania stated that applicants for asylum "often rel[y] on fraudulent documents," "forged documents are . . . common," "documents issued by Albanian medical practitioners are rarely

7

reliable," "[a]ll political parties have been active in most the country without a pattern of mistreatment, even during the dark days of 1997," and "[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds." This evidence corroborated the concern of the IJ about both Zhuleku's documentary evidence and testimony. Because substantial evidence supports the denial of Zhuleku's application for asylum, we deny her petition.

Zhuleku also petitions for review of the denial of her application for withholding of removal under section 241(b)(3) of the INA. See 8 U.S.C. § 1231(b)(3). Because the standard of proof required for withholding of removal is higher than the standard of proof required for well-founded fear of future persecution, an alien who fails to meet the standard for well-founded fear of future persecution necessarily will fail to meet the standard for withholding of removal. D-Muhumed, 388 F.3d at 819; see Al Najjar, 257 F.3d at 1292-93. Zhuleku's failure to prove a well-founded fear of future persecution in her application for asylum necessarily means that she failed to qualify for withholding of removal.

**PETITION DENIED.**