[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 14, 2006**
**THOMAS K. KAHN**
**CLERK**

No. 05-12718
Non-Argument Calendar
_____

Agency No. A78-610-761

IRINA ROMANENKOVA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 14, 2006)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Irina Romanenkova appeals the Board of Immigration Appeals's "(BIA")

affirmance of the immigration judge's ("IJ") removal order and denial of relief

from removal. She argues that the IJ erred in denying her asylum application as untimely and in denying her withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"). We DISMISS Romanenkova's petition with regard to her claim for asylum because we lack jurisdiction to review it, and we DENY her petition with regard to her remaining claims for withholding of removal and relief under CAT.

## I. BACKGROUND

In February 2001, the former Immigration and Naturalization Service[1] ("INS") initiated removal proceedings against Romanenkova, a native citizen of Russia, charging her as removable pursuant to the Immigration and Nationality Act (INA) § 237(a)(1)(B), codified at 8 U.S.C. § 1227(a)(1)(B), for being a nonimmigrant who remained in the United States longer than permitted. Romanenkova filed an application for asylum and withholding of removal, alleging that she had suffered past persecution and feared future persecution because of her

---

[1] On 25 November 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department. However, because this case was initiated while the INS was still in existence, this opinion refers to the agency as the INS rather than the DHS.

membership in the social group of retired individuals and her political opinions. In her application, she alleged that she had been detained, interrogated, and threatened by Russian police for crimes that she had not committed, and her mother had been arrested and charged with a crime that she did not commit. She also alleged that if she returned to Russia she would be detained, interrogated, tortured, and persecuted because of her membership in a particular social group and her political opinion.

Attached to the application was Romanenkova's affidavit, which stated, in pertinent part, the following: The KGB had spied on her and her husband. On one occasion, after she had not been paid for time she took off work due to illness, her employer sent her to the police station and the police detective accused her of forging her doctor's notes, screamed at her, and threatened to put her in jail for cheating her employer. On another occasion, a policeman ran a red light and hit her car, but her license was suspended and she was harassed for compensation by the man who hit her. Later, two undercover Russian police officers forced her mother into the back seat of a car, bound and gagged her, and asked her where she hid the money she received from her daughter. After being unable to get into her apartment with the keys she gave them, they beat and threatened her, and in the morning, ejected her from their car. One of Romanenkova's friends was also

3

arrested and kept in jail for six months before her innocence was acknowledged and she was released. Additionally, in support of her asylum application, Romanenkova filed several letters to corroborate her claims. She also filed several documents related to the country conditions in Russia, including the United States Department of State Country Report on Human Rights Practices in Russia for the years 1997-2002.

During the asylum hearing, Romanenkova admitted she was an alien who had stayed in the United States longer than the temporary period allowed for nonimmigrant visitors. The IJ stated that, although Romanenkova's asylum application was filed more than one year after she entered the United States, he was going to give her an opportunity to show exceptional circumstances.

Romanenkova testified that she lived in Moscow before coming to the United States in June 1999. She stated that, in December 1997, she got into a automobile accident, when a policeman ran a red light and hit her car. When the traffic police showed up at the accident, she was accused of running the red light and causing the accident. The police then detained her at the police station for twenty-four hours, during which time she was interrogated and they threatened to put her in jail. She refused to sign the traffic report and later complained to the Ministry of Foreign Affairs that the report was incorrect and the police were

4

threatening her and demanding money from her. Approximately two weeks after the accident, a man who claimed to be a retired colonel came to her home and demanded that she pay $2,000 for the car. About two months after the accident, she went to the police headquarters and was detained by police for nine hours. During the six months after the accident, she was repeatedly called into the police station, interrogated, and detained. She also received threatening phone calls. The police threatened to put her in jail, murder her, and take possession of her apartment. She was afraid that they would murder her because they wanted her apartment and money. She stated that, on one occasion, she expressed her political opinion to police employee and told him that he worked for the government and was therefore supposed to protect citizens, not to enrich himself.

She also stated that in August 1998, the police stole her car and then stole the car that she borrowed from her friend. She traveled to the United States in January 1998, stayed for about a month, and returned to Moscow. When she got back to Moscow, people told her that a man had been looking for her. She traveled to Puerto Rico in August 1998 for ten days, and then returned to Moscow. She traveled to the United States again in January 1999, and returned to Moscow in April 1999. She stated that, during this time period, the police were constantly looking for her and asking her neighbors about her.

She came to the United States the last time hoping that, if she stayed for a while, the situation would change in Russia. She claimed that she believed the police in Russia were after her because she was a single, older, retired person who they could easily overpower, and they wanted her apartment. She also expressed her fears that Russia was turning back into a socialist regime since the election of President Vladimir Putin. She argued that she was afraid to return because she had been persecuted in the past and that the police would continue to threaten and blackmail her.

On 9 October 2003, the IJ denied Romanenkova's application for asylum, withholding of removal, and relief under CAT. In the oral decision, the IJ stated that Romanenkova's application was untimely and that she had not shown any exceptional circumstances or changed circumstances that would excuse the late filing. Specifically, the IJ found that, even accepting President Putin's socialist agenda, there was no evidence that Romanenkova would be in a worse situation under Putin than she would have been under Yeltsin. Moreover, even if the application was timely filed, the IJ determined that she was not eligible for asylum because she had failed to show that any persecution was because of any protected status. Thus, the IJ found that it was appropriate to pretermit the application for

6

asylum, although her applications for withholding of removal and CAT relief survived.

As to those claims, the IJ found that her application failed on the merits because she failed to prove past persecution or a well-founded fear of future persecution based on her political opinion or membership in a social group. The IJ noted that while her testimony was believable, she was only detained on two occasions, there was only anecdotal evidence that the authorities were interested in her property, and no evidence that she suffered any restrictions on her life or liberty. While the IJ found that her fear was genuine, there was nothing in the record to show that her fear was reasonable. The IJ further found that, under the higher burden of proof for withholding of removal, Romanenkova had failed to show that she would suffer any treatment that would constitute persecution or that any mistreatment would be on account of her membership in a particular social group or because of her political opinion. Finally, the IJ found that she also failed to show grounds for relief under the CAT because the mistreatment she testified to did not constitute torture.

On 27 October 2004, Romanenkova appealed the IJ's decision to the BIA, arguing that she proved the existence of changed circumstances in Russia, in that the president had changed since her departure and, thus, her asylum application

should not have been pretermitted as untimely. She also argued that her untimely filing should be excused because her reasonable fears and inability to speak English delayed the filing of her application. Additionally, she argued that she submitted evidence of both her subjective and objective fears and that her testimony was consistent with the State Department's reports and the world media reports on the country conditions in Russia. Lastly, she argued that she was a member of a social group that was being persecuted.

On 18 November 2004, the INS filed a motion for summary affirmance, arguing that the IJ's decision was correct and Romanenkova's arguments on appeal were not so substantial that the case warranted a written opinion. On 22 April 2005, the BIA affirmed the IJ's decision, adopting the decision except to the extent that the BIA concluded that the IJ had made a misstatement when stating that Romanenkova had suffered torture in the past, which created a rebuttable presumption that she would suffer torture in the future. The BIA agreed with the IJ's other statement that there was no evidence Romanenkova had suffered torture in the past.

On appeal, Romanenkova argues that the IJ erred in denying her application for asylum as untimely because she presented evidence both with regard to the existence of changed circumstances in Russia that materially affected her eligibility

8

for asylum and to the extraordinary circumstances relating to the delay in the filing of her application within the one-year period following her arrival in the United States. In response, the government filed a motion to dismiss her petition for review, arguing that we do not have jurisdiction to review her petition because the BIA denied her asylum claim based on timeliness and that she did not administratively exhaust her remaining withholding of removal and CAT claims. In the alternative, the government asks for 30 days to file a responsive brief if the motion to dismiss is not granted.[2]

## II. DISCUSSION

### A. Jurisdiction To Review Petition

We generally have jurisdiction to review final orders of removal. See 8 U.S.C. § 1252(a)(1), (b)(9). We may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." Id. § 1252(d)(1); see Sagermark v. I.N.S., 767 F.2d 645, 648 (9th Cir. 1985) (holding that exhaustion requirements were satisfied when the agency had, in fact, ruled on an issue, regardless of whether the issue was technically before it). An

---

[2]Because we dismiss Romanenkova's petition with regard to the asylum claim and deny the remainder of her petition with regard to her claims for withholding of removal and relief under CAT, the government's request for an extension of time to file a responsive brief is denied as moot.

alien can apply for asylum if she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An otherwise untimely application can be accepted if the alien demonstrates "to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum," or "extraordinary circumstances relating to the delay in filing an application within the period specified." Id. § 1158(a)(2)(D). However, "no court shall have jurisdiction to review [this] determination of the Attorney General." Id. § 1158(a)(3). We have held that 8 U.S.C. § 1158(a)(3) "divests our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse [an] untimely filing." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). Further, we recently held that certain jurisdiction-restoring provisions in the recently enacted REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), do not change this conclusion. See Chacon-Botero v. U.S. Attorney Gen., 427 F.3d 954, 957 (11th Cir. 2005) (per curiam).

Thus, we lack jurisdiction to review the BIA's finding that Romanenkova's asylum application was untimely and, therefore, dismiss her petition with regard to

her asylum claim. However, Romanenkova's remaining withholding of removal and CAT claims were addressed by the BIA. Consequently, these claims have been exhausted, and we have the necessary jurisdiction to review them.

B. Review of Romanenkova's Claims for Witholding of Removal and Relief Under CAT

Romanenkova argues that she met her burden of proof for withholding of removal by showing that she suffered past persecution because of her political opinion in that she had been detained on two occasions by Russian police who tried to force her to sign a false police report and who also threatened her. She further maintains that she met her burden of proof for relief under CAT by showing that she more likely than not would be persecuted when she returned to Russia and that her fear existed on a country-wide basis because of the election of President Putin.

We review only the decision of the BIA, "except to the extent that it expressly adopts the IJ's opinion." Nreka v. U.S. Attorney Gen., 408 F.3d 1361, 1368 (11th Cir. 2005) (internal quotations omitted). Here, the BIA adopted the IJ's findings and added some comments of its own, so we review both. The IJ's factual determination that an alien is not entitled to withholding of removal is reviewed under the substantial evidence test, and must be upheld if it is supported by

11

"reasonable, substantial, and probative evidence on the record considered as a whole." Id. (discussing asylum claim) (internal quotations omitted). To reverse the IJ's findings, we must find that the record compels it. Mendoza, 327 F.3d at 1287.

An alien seeking withholding of removal under the INA must show that her life or freedom would "more likely than not" be threatened upon return to her country because of, among other things, her political opinion or membership in a social group. Sanchez v. U.S. Attorney Gen., 392 F.3d 434, 437 (11th Cir. 2004) (per curiam).

> An alien bears the burden of demonstrating that [s]he more-likely-than-not would be persecuted or tortured upon [her] return to the country in question. If the alien establishes past persecution in [her] country based on a protected ground, it is presumed that [her] life or freedom would be threatened upon return to [her] country unless the INS [now DHS] shows by a preponderance of the evidence that, among other things, (1) the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon [her] removal; or (2) that the alien could avoid a future threat to [her] life or freedom by relocating to another part of the proposed country of removal, and it would be reasonable to expect [her] to do so. An alien who has not shown past persecution, though, may still be entitled to withholding of removal if [s]he can demonstrate a future threat to [her] life or freedom on a protected ground in [her] country. An alien cannot demonstrate that [s]he more-likely-than-not would be persecuted on a protected

12

ground if the IJ finds that the alien could avoid a future threat by relocating to another part of [her] country.

Id. (internal quotations and citations omitted); see also 8 U.S.C. § 1231(b)(3)(A).

Neither the INA nor the regulations define persecution. We have described persecution as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations omitted). "Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." Vatulev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003).

To obtain withholding of removal under the CAT, the burden is on the applicant to establish that it is "more likely than not" she will be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2).

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

13

Id. § 208.18(a)(1). To constitute torture, an act "must be specifically intended to inflict severe physical or mental pain or suffering." Id. § 208.18(a)(5).

In this case, the evidence does not compel us to conclude that Romanenkova's physical detention and the threats made to her were so severe as to constitute past persecution. Moreover, the evidence does not compel us to conclude that it is more likely than not that she will experience future persecution or torture upon her return, especially in light of the fact that she had traveled outside of Russia three times after the alleged detentions and returned with no significant incidents. She has failed to show that any possible persecution would be on account of her political opinion or a protected social group. Instead, the harassment appears to be a result of a desire for her money and her valuable apartment. She has also failed to demonstrate that a relocation within Russia would not stop her harassment.

### III. CONCLUSION

Irina Romanenkova appeals the BIA's affirmance of the IJ's removal order and denial of relief from removal. Because her application for asylum was filed more than one year after her arrival in the United States, we lack jurisdiction to review this claim in her petition. Because the record does not compel a reversal of

14

the IJ and BIA's decision regarding her claims for withholding of removal and relief under CAT, we deny the remainder of her petition. **PETITION DISMISSED IN PART, DENIED IN PART.**