[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 29, 2010
JOHN LEY
ACTING CLERK

No. 09-11992
Non-Argument Calendar
_____

Agency No. A098-938-340

DALIBOR DIMITRIJEVSKI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 29, 2010)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Dalibor Dimitrijevski, a native and citizen of Macedonia, proceeding pro se, seeks review of the decision by the Board of Immigration Appeals ("BIA") denying his asylum application. Although the Immigration Judge ("IJ") did not issue a final order of removal, we have jurisdiction to consider the petition for review because the denial of asylum in an asylum-only proceeding constitutes a final order of removal for jurisdictional purposes. We lack jurisdiction, however, to consider Dimitrijevski's due process claims because he failed to exhaust them before the BIA. As to his asylum claim, we conclude that substantial evidence supported the IJ and BIA's finding that the government rebutted the presumption of a well-founded fear of future persecution. Accordingly, we **DISMISS** the petition in regard to the due process claims and **DENY** the petition with respect to his asylum claim.

## I. BACKGROUND

Dimitrijevski, a native and citizen of Macedonia, arrived in the United States at Port Everglades, Florida, on 2 March 2006, as a nonimmigrant alien serving as a crewman on a Bahamian vessel. On 2 April 2006, the Customs and Border Protection received notice that Dimitrijevski had deserted the vessel the day before. The Department of Homeland Security (formerly the Immigration and Naturalization Service) immediately initiated immigration proceedings, pursuant to 8 U.S.C. § 1282(b), by serving the vessel with a notice to remove Dimitrijevski

2

from the United States. Dimitrijevski subsequently filed an application for asylum and withholding of removal. After a credible-fear interview, an asylum officer issued a Notice of Referral to Immigration Judge, thereby placing Dimitrijevski in asylum-only proceedings under 8 C.F.R. § 208.2(c).

At the merits hearing, Dimitrijevski testified that he last arrived in the United States in March 2006 under a crewman visa. For the five months preceding March 2006, he had entered the United States on a daily basis because he worked on a ship that provided tours between the Bahamas and Fort Lauderdale, Florida. Dimitrijevski explained that it was not safe for him to return to Macedonia because he and his family had been involved in the 2001 war between Albanian rebels and ethnic Macedonians. Specifically, Albanian rebels occupied approximately half of Macedonia and forced him out of his village at gunpoint to ethnically cleanse Macedonia. In June 2001, a commander of the rebels approached Dimitrijevski outside his home and threatened to cut off his genitals with a knife if his family did not leave the area, and another rebel fired shots at the roof of his house. Dimitrijevski testified that, even prior to the war, Albanians sent letters urging his family to move, damaged their home, beat them, and attacked them with rocks. The conflict in his village ended in July 2001 after the Albanian rebels forced out all of the ethnic Macedonians.

3

Dimitrijevski was afraid to return to Macedonia because he feared the Albanians would recognize him from his four-month stint as a cook in the Macedonian military during 2001 and 2002. He believed his village remained unsafe based on the murder of his best friend's grandfather three months ago. According to Dimitrijevski, relocation within Macedonia was impossible because the country was geographically small and the government could not offer protection for refugees still in hiding. When asked about his family members, Dimitrijevski admitted that his mother, brother, and sister had relocated from a refugee camp to a house in Skopje, Macedonia, the same city where his uncle lived. Dimitrijevsk's father had moved to Russia to seek employment.

In an oral decision, the IJ found Dimitrijevski credible but concluded that his fear of future persecution was negated by the documentary evidence of changed country conditions. Furthermore, the IJ found that Dimitrijevski could relocate to an area occupied by a majority of ethnic Macedonians. The IJ therefore denied Dimitrijevski's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ did not enter an order of removal.

On appeal, the BIA noted that Dimitrijevski failed to contest the IJ's denial of withholding of removal and CAT relief.[1] With respect to the asylum claim, the BIA recognized that the IJ failed to make an explicit determination as to whether Dimitrijevski had suffered past persecution. Even assuming past persecution, however, the BIA agreed with the IJ that the government had rebutted the presumption of a well-founded fear of future persecution by establishing changed country conditions, and that Dimitrijevski could safely relocate within Macedonia. The BIA therefore dismissed the appeal.

This petition for review followed.

## II. DISCUSSION

A. Jurisdiction over Dimitrijevski's Asylum Claim

We review de novo our subject matter jurisdiction. Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266 (11th Cir. 2004). When examining a petition for review, "we must first consider whether we have subject matter jurisdiction to hear the petition at all." Id. Accordingly, we initially address whether we have jurisdiction to consider the petition for review of the BIA's denial

---

[1] Likewise, Dimitrijevski does not raise any argument in his petition to us regarding the denial of his application for withholding of removal or CAT relief. He has therefore abandoned these issues. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

of Dimitrijevski's asylum application even though the IJ did not expressly order Dimitrijevski's removal.[2]

A nonimmigrant alien who arrives as a crewman may be permitted to land temporarily in the United States. See 8 U.S.C. § 1282(a) (2009). However, if an immigration officer determines that the crewman does not intend to depart on the vessel, or is not a bona fide crewman, the officer may revoke the conditional permit and order the crewman removed without undertaking further removal proceedings under 8 U.S.C. § 1229. See id. § 1282(b). If the crewman indicates an intention to apply for asylum, he will be referred to an IJ for asylum-only proceedings. See 8 C.F.R. § 208.2(c)(3)(i) (2009).

Pursuant to 8 U.S.C. § 1252(a)(1), we have jurisdiction to review a final order of removal. See 8 U.S.C. § 1252(a)(1) (2009); Nreka v. United States Att'y Gen., 408 F.3d 1361, 1367 (11th Cir. 2005). Because Dimitrijevski was placed in asylum-only proceedings under § 208.2(c)(3), no formal order of removal was entered by the IJ. Nevertheless, we have held that we have jurisdiction to review the BIA's final disposition of an asylum-only proceeding under § 208.2(c) even in the absence of a final order of removal. See Nreka, 408 F.3d at 1367-68. In Nreka, an Albanian citizen sought admission to the United States under the Visa Waiver Program ("VWP"). See id. at 1363. Nreka requested asylum and was

_____

[2] Both parties briefed this issue in response to our jurisdictional question.

6

placed in asylum-only proceedings pursuant to 8 C.F.R. §§ 217.4(a)(1) and 208.2(c). See id. at 1363-64. The IJ denied asylum and withholding of removal under the INA and the CAT, but the IJ did not expressly order Nreka removed. See id. at 1365-66. The BIA agreed that Nreka's claim was not credible and dismissed his appeal. See id. at 1366. We determined that we had jurisdiction to review his claim under 8 U.S.C. § 1252(a)(1) because the denial of asylum and withholding of removal in Nreka's case constituted a final order of removal for jurisdictional purposes. See id. at 1367. We reasoned that "[t]he denial of an asylum application in a VWP proceeding is so closely tied to the removal of the alien that it can be deemed – in conjunction with the referral to the immigration judge – as a final order of removal, subject to § 1252(a)(1)." Id.

The rationale of Nreka applies to the case at hand. As in Nreka, Dimitrijevski was referred to an IJ for an asylum-only proceeding, the IJ denied asylum and withholding of removal, and the IJ did not expressly order Dimitrijevski removed. Like a VWP applicant, an alien crewman who is not granted relief in an asylum-only proceeding may be removed without further proceedings. See 8 U.S.C. § 1282(b). The BIA's denial of an asylum application for an alien crewman is thus so interwoven with the alien's removal that it can be deemed a final order of removal for purposes of the jurisdictional requirement of § 1252(a)(1). See Nreka, 408 F.3d at 1367.

7

The government argues that Nreka is distinguishable because VWP participants waive their right to challenge their removal, except with respect to asylum claims. See 8 U.S.C. § 1187(b)(2) (2009) (requiring an alien admitted under the VWP to waive any right "to contest, other than on the basis of an application for asylum, any action for removal of the alien"). Unlike VWP participants, Dimitrijevski can still dispute the terms of removal once he receives his Notice of Revocation and Penalty informing him that his conditional landing permit has been revoked and his removal has been ordered pursuant to 8 U.S.C. § 1282(b).

The VWP waiver-of-rights provision was not a basis for our holding in Nreka, however, because Nreka had not yet been admitted under the VWP but merely identified as a "VWP applicant." Nreka, 408 F.3d at 1363, 1366 n.5. Rather, Nreka relied on the principle espoused in Perkovic v. INS, 33 F.3d 615, 618-19 (6th Cir. 1994), that a BIA order rejecting an asylum application may constitute a final order of removal even though no formal order of removal has been issued. See Nreka, 408 F.3d at 1367. As the Sixth Circuit explained in Perkovic, an order of deportation (or removal) includes not only "the piece of paper authorizing the government" to remove the alien but also "any denial of discretionary relief during a deportation proceeding, where such relief, if granted, would foreclose deportation." Perkovic, 33 F.3d at 618. This principle applies

equally to VWP applicants and crewman aliens, like Dimitrijevski, whose conditional landing permits are subject to revocation. Furthermore, Nreka relied upon Del Pilar v. United States Att'y Gen., 326 F.3d 1154, 1156-57 (11th Cir. 2003) (per curiam). See Nreka, 408 F.3d at 1367. In Del Pilar, we held that a BIA order reversing the IJ's decision to grant Del Pilar relief from removability amounted to a final order of removal because "all of the issues presented to us were subject to a final order by the BIA and there is nothing remaining for Del Pilar to appeal." See Del Pilar, 326 F.3d at 1156-57. The same is true here. Even absent the Notice of Revocation and Penalty, all the issues presented in the petition for review were subject to the final order by the BIA denying asylum, so there is nothing left for Dimitrijevski to appeal to the BIA.

Accordingly, we conclude that the rationale of Nreka applies to the denial of asylum applications for crewman aliens. We therefore have jurisdiction to review his asylum claim under § 1252(a)(1).[3]

B. Jurisdiction over Dimitrijevski's Due Process Claims

Dimitrijevski next asserts that the IJ violated his constitutional and statutory due process rights to a full and fair hearing by not complying with the agency's

---

[3] Given our conclusion, we do not reach Dimitrijevski's alternative argument that we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). In Nreka, we noted that this section, unlike § 1252(a)(1), "contains no language that could be interpreted as requiring that the petitioner be subject to a 'final order of removal'" and thus "may itself provide a grant of jurisdiction to review any denial of asylum." Nreka, 408 F.3d at 1367 n.7.

procedural regulations. Specifically, Dimitrijevski asserts that (1) the IJ never notified him that if he were ordered removed, the country of removal would be the one designated by Dimitrijevski, (2) the IJ never provided him the opportunity to designate a country of removal, (3) the IJ never designated a country for removal, and (4) the IJ never permitted him to present evidence regarding his fear of persecution in the countries where he had a lesser connection.

"We lack jurisdiction to consider claims raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto." Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam); see also 8 U.S.C. § 1252(d)(1). Procedural due process claims are subject to the exhaustion requirement. See Amaya-Artunduaga, 463 F.3d at 1251 (concluding that the alleged denial of a full and fair hearing before the IJ is the type of procedural due process error that requires exhaustion). Dimitrijevski did not raise before the BIA the IJ's alleged procedural due process violations that he now raises in the petition for review. Accordingly, we lack jurisdiction to review these claims. See id.

C. Denial of Asylum

Turning to the merits of Dimitrijevski's asylum claim, we review only the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." Nreka, 408 F.3d at 1368 (quotation marks and citation omitted). We review de

novo the BIA or IJ's legal determinations.  Id.  "The IJ's factual determination that an alien is not entitled to asylum must be upheld if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. (quotation marks and citation omitted).

To qualify for asylum, an alien has the burden of presenting specific and credible evidence showing (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear of future persecution based on a protected ground.  Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007). Protected grounds are race, religion, nationality, membership in a particular social group, or political opinion.  See id.  Once past persecution has been established, an alien is presumed to have a well-founded fear of future persecution.  See De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1007 (11th Cir. 2008).[4]  The government may rebut this presumption by showing, by a preponderance of the evidence, either (1) a change in the country's conditions, or (2) that relocation within the country would avoid future persecution and that it was reasonable to expect the alien to do so.  Id.  To establish a well-founded fear of future

_____

[4] An applicant who fails to demonstrate a well-founded fear of future persecution may still be granted asylum on the basis of past persecution alone if (1) there are compelling reasons why the applicant cannot return to the country due to the severity of past persecution, or (2) there is a reasonable possibility that the applicant "'may suffer other serious harm upon removal to that country.'"  See De Santamaria, 525 F.3d at 1007 n.4 (quoting 8 C.F.R. § 208.13(b)(1)(iii)). As Dimitrijevski does not contend that he is eligible for asylum under § 208.13(b)(1)(iii), we do not address it.

11

persecution, an alien must show "a reasonable possibility of suffering such persecution if he or she were to return to that country." Mejia, 498 F.3d at 1256 (quotation marks, citation, and italics omitted). The alien's fear must be both subjectively genuine and objectively reasonable. See De Santamaria, 525 F.3d at 1007.

The record supports the BIA's finding that the government successfully rebutted Dimitrijevski's presumed fear of future persecution. Contrary to Dimitrijevski's contention, the BIA applied a presumption of a well-founded fear of future persecution after assuming that Dimitrijevski suffered past persecution based on a protected ground. The BIA determined that this presumption had been rebutted, though, by evidence of the changed country conditions contained in the 2007 Country Report. That report indicates that, after Dimitrijevski fled Macedonia, the war between ethnic Macedonians and ethnic Albanians ended, and relations between the two populations, though strained, continued to improve. Macedonia became a parliamentary government led by a prime minister representing a multiethnic governing coalition. Ethnic Macedonians accounted for approximately 64 percent of the 2.1 million population and ethnic Albanians were 25 percent of the population. With regard to individuals displaced during the 2001 internal conflict, 779 persons were not fully resettled, but the government was encouraging the displaced individuals to return to their homes of origin in areas

that were now safe. Disputes between parents and school authorities over ethnic issues had also decreased. This evidence sufficiently supported the agency's findings of changed country conditions.

Dimitrijevski faults the BIA for citing only one report in its decision and asserts that the BIA improperly took administrative notice of "other documents" without citing any specific document. The BIA's decision reflects that it did not take administrative notice of unspecified documents. Moreover, the BIA's reliance on the 2007 Country Report was proper. See Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1198-1200 (11th Cir. 2009) (per curiam) (rejecting the petitioner's argument that the IJ erred in relying solely on the country reports to find changed country conditions); Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1175 (11th Cir. 2008) (noting that the BIA may rely heavily on country reports given that the State Department is the most appropriate resource on foreign nations' political conditions). In any event, the substantial evidence test precludes us from reweighing from scratch the importance attributed to a particular report. See Djonda, 514 F.3d at 1175.

Besides the changes in Macedonia's political situation, there was also substantial evidence to support the BIA's finding that Dimitrijevski could relocate to avoid future persecution. As noted, ethnic Macedonians are the majority group and Dimitrijevski acknowledged that there were areas in Macedonia inhabited

mainly by ethnic Macedonians. The fact that Dimitrijevski's immediate family continues to reside unharmed in a new village in Macedonia also undermines the objective reasonableness of his fear of future persecution. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006) (per curiam) (rejecting claim that relocation was not possible in light of evidence that the applicant's son and parents lived safely in the same area where the alleged persecution occurred). Although Dimitrijevski believes he will be recognized and punished for being a former member of the Macedonian military, his low-level status as a cook is unlikely to mark him as a high-profile target by rebels. See Mazariegos v. Office of the U.S. Att'y Gen., 241 F.3d 1320, 1327 (11th Cir. 2001) (reasoning that because alien did not play a notorious role in the war, the guerillas were unlikely to identify or pursue him upon his return to Guatemala).

In sum, the record contains substantial evidence to support the BIA's finding that changed country conditions in Macedonia and the possibility of relocation negated the presumption that Dimitrijevski had a well-founded fear of future persecution in Macedonia. Accordingly, the BIA correctly denied his asylum claim. See Mehmeti, 572 F.3d at 1200.

### III. CONCLUSION

14

Based on the foregoing, we DISMISS the petition for lack of jurisdiction as to Dimitrijevski's due process claims and DENY the petition as to his asylum claim.

**DISMISSED in part; DENIED in part.**