[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 31, 2006
THOMAS K. KAHN
CLERK

No. 05-15781
Non-Argument Calendar

_____

BIA No. A97-133-609

ARDIANA GASHI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 31, 2006)**

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Ardiana Gashi, an Albanian Kosovar, petitions through counsel for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the Convention Against Torture ("CAT"). On appeal, Gashi argues that the IJ's adverse credibility determination was not supported by substantial evidence and that she met her burden to show entitlement to asylum and withholding of removal under the INA and to CAT relief.

We have jurisdiction to review a final order of removal of a visa waiver program applicant. *See Nreka v. U.S. Att'y Gen.*, 408 F.3d 1361, 1367 (11th Cir. 2005). When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA adopted the IJ's decision; thus we review the IJ's decision as well. *See id.*

## I. STANDARD OF REVIEW

"To the extent that the BIA's decision was based on a legal determination, [our] review is *de novo*." *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817 (11th Cir. 2004). We review factual determinations under the substantial evidence test, however, and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at

2

817-18. Credibility determinations are likewise reviewed under the substantial evidence test. *Id.* at 818. "The trier of fact must determine credibility, and this [C]ourt may not substitute its judgment for that of the BIA with respect to credibility findings." *Id.* Ultimately, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B). Thus, "[t]o reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

## II. DISCUSSION

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security or the Attorney General may grant asylum if the alien meets the INA's definition of "refugee." *Id.* § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A). The burden is on the alien to establish that she is a refugee by offering "credible, direct, and specific evidence in the record." *Forgue v. U.S.*

3

*Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (quotation omitted); *see* 8 C.F.R. § 208.13(a); 1208.13(a). Specifically, "the alien must establish a 'well-founded fear' that . . . her political opinion (or other statutorily listed factor) will cause harm or suffering that rises to the level of 'persecution.'" *Al Najjar*, 257 F.3d at 1287. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (internal quotes and alteration omitted). "[E]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been a victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam).

If the alien establishes past persecution in a country, it is presumed that her life or freedom would be threatened upon a return to that country, unless the government shows by a preponderance of the evidence that the country's conditions have changed such that the alien's life or freedom would no longer be threatened, or that the alien could relocate within the country and it would be reasonable to expect her to do so. 8 C.F.R. § 208.13(b); 1208.13(b). An alien who has not shown past persecution in her country may still be entitled to asylum if she

4

can demonstrate a future threat to her life or freedom on a protected ground in that country. *See id.* § 208.13(b)(2); 1208.13(b)(2); *Ruiz*, 440 F.3d at 1258. The fear of future persecution, however, must be "both subjectively genuine and objectively reasonable." *Ruiz*, 440 F.3d at 1257.

Gashi challenges the IJ's determination that her testimony was not credible. The testimony of an applicant, if credible, may be sufficient to establish eligibility for asylum even in the absence of corroborating evidence. *D-Muhumed*, 388 F.3d at 818-19. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Forgue*, 401 F.3d at 1287. "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz*, 440 F.3d at 1255. Here, the IJ found an "overriding concern" in Gashi's "honesty or lack of honesty that she . . . engaged in as far as her transit to the United States." He noted that, during an interview with an immigration officer at the airport where she was intercepted with a fraudulent passport, Gashi falsely stated that she had come to the United States to meet her fiance. The IJ further found that Gashi's descriptions of various attacks upon her by masked or unidentified men in February and November of 2002 were not clear and consistent, and the IJ expressed "difficulty in being able to assess exactly what is real and what is not in [Gashi's] case . . . ."

5

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Forgue*, 401 F.3d at 1287. As indicated above, the IJ did offer several reasons for his adverse credibility determination, but the record indicates that the IJ did not consider all of Gashi's testimony as to past persecution. The IJ apparently did consider the more recent events to which Gashi testified, such as: the killing of Gashi's cousin; an attack in February of 2002 where a masked man in a black car followed the car Gashi and her uncle were driving and began shooting at them; and an attack in November of 2002 where a "faceless" man and his partner threatened to torture Gashi and tried to kidnap Gashi by pulling her into their car. According to the IJ, there was little to indicate that these events had anything to do with Gashi's affiliation with the Democratic League of Kosovo ("LDK"), or with "anything else having to do with the legal standards involving political asylum." The IJ also noted that the rest of Gashi's family had continued to live in Kosovo, and that the LDK continues to exist as a viable political party.

The IJ did not, however, make any significant mention of Gashi's other testimony as to past persecution, including: the seizure and torture of Gashi's father (a teacher and LDK speaker) by Serbs more than fifteen times during the 1980s and 90s; an incident in April of 1987 when Serbian police officers broke

6

into Gashi's home, beat her father, mother, uncle, herself, and her brother, and took her uncle and father to prison; the expulsion of Gashi, her family, and other Albanian Kosovars from their homes by Serbian police officers on March 24, 1999 (the homes were then burned); the forcing of thousands of Albanian Kosovars into trucks, at gunpoint, to be deported; Gashi's mother having to pay 500 deutschemarks during the deportation so that Gashi's father would not be killed; and the seizure of Gashi's mother, sister (who was then 17), and cousins by soldiers who held them captive for approximately ten days and raped them. Gashi submitted copies of medical reports confirming that her mother and sister were examined on April 3, 1999, and exhibited signs of rape, sexual assault, and physical abuse. The 2002 Country Report submitted by Gashi also provides some general corroboration, stating that "[i]n early 1999, large numbers of Kosovar Albanians fled their homes, many of which were subsequently destroyed, escaping Yugoslav and Serbian forces." The Country Report further acknowledges the indictment and trial of numerous Serbian officials and paramilitary members for the abduction, torture, and/or murder of Muslims and Albanians in the 1990s, as well as "the existence of mass graves containing bodies presumed to be those of ethnic Albanians killed in Kosovo and transferred to mass graves in Serbia in

7

1999."  The IJ offered no explanation as to why Gashi's testimony as to these events was not credible, and made only a passing reference to the Country Report.[1]

"[An] IJ must [] consider *all* evidence introduced by the applicant."  *Forgue*, 401 F.3d at 1287.  Moreover, where an applicant introduces evidence of persecution beyond her own testimony, "the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances."  *Id.*   Here, the record suggests that the IJ did not consider all evidence submitted by Gashi, much of which was relevant to her claim of past persecution.  Furthermore, the IJ's decision focused almost exclusively on whether Gashi was persecuted based on her LDK affiliation, but Gashi also claimed persecution on the basis of her Albanian ethnicity.  Contrary to what the BIA's opinion states, the IJ simply did not make any clear or cogent finding as to past persecution on this alternative ground, other than to state summarily that Gashi had not demonstrated eligibility "for the form of relief that she has asked for."

## III. CONCLUSION

The IJ's failure to evaluate all of Gashi's claimed bases for asylum, and to consider all of the evidence submitted, constitutes reversible error.  *See Forgue*,

---

[1]  The IJ's reference to Gashi's psychological evaluation was also extremely brief.  Notably, the clinical psychologist who examined Gashi concluded that she exhibited a posttraumatic stress disorder, that "her story was internally consistent," and that "her affect at the time of the interview . . . and psychological symptoms were appropriate to the objective findings."

8

401 F.3d at 1287; *cf. Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1226 (11th Cir. 2006) (per curiam) (BIA's failure to consider all requisite factors in making relocation determination was reversible error).[2] We therefore vacate the BIA's order and remand this case to the BIA with instructions to remand the case to the IJ for further proceedings not inconsistent with this opinion.[3]

**PETITION GRANTED.**

---

[2] If, for example, a consideration of *all* the evidence submitted by Gashi reveals that she suffered past persecution on the basis of *any* statutorily established factor, Gashi would be entitled to a presumption of a well-founded fear of persecution on that basis. *See* 8 C.F.R. §§ 208.13(b)(1); 1208.13(b)(1). The burden would then shift to the government to establish by a preponderance of the evidence that there had been a fundamental change in circumstances or that Gashi could relocate. *See id.*

[3] It appears that the denials of Gashi's claims for withholding of removal and CAT relief were essentially predicated on the denial of her asylum claim. As we have now decided that the asylum claim must be reevaluated under the proper legal standards, Gashi's withholding of removal and CAT claims must be reevaluated as well. Although the BIA stated that the record failed to demonstrate Gashi was more likely than not to be tortured with the consent or acquiescence of a government official, this conclusory statement is likewise undermined by the failure of the IJ, whose opinion the BIA adopted, to consider all the evidence submitted.