[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 1, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12906
Non-Argument Calendar

_____

BIA No. A97-661-054

WEI CHEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 1, 2007)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Wei Chen, a native and citizen of the People's Republic of China, through counsel, petitions for review of the decision of the Board of Immigration Appeals (BIA). The BIA's decision adopted and affirmed the Immigration Judge's (IJ) order removing Chen from the United States and denying his application for (1) asylum, (2) withholding of removal, and (3) relief under the United Nations Convention Against Torture (CAT) and under the Immigration and Nationality Act (INA).

Following a hearing on the merits of Chen's application for asylum, the IJ found that Chen was not credible and, for that reason, denied his application and ordered him removed. On appeal, Chen argues that the IJ's adverse credibility finding was based not on objective facts, but rather on the IJ's speculation, conjecture, and unfounded personal opinions. Chen also argues that the IJ relied too heavily on various reports from the U.S. State Department and foreign countries. Chen further argues that the inconsistencies in the documentary evidence are too minor to call his credibility into question. Finally, Chen argues that the IJ's denial of his application for asylum and for withholding of removal is erroneous because the findings underlying the IJ's decision are not supported by substantial record evidence.

**I.**

Because the BIA both adopted the IJ's decision and made additional findings, we review both the BIA's decision and the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review factual determinations, including credibility determinations, using the substantial evidence test. Forgue v. United States Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation and quotation marks omitted). We review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. Id. To conclude that the IJ or BIA should be reversed, we "must find that the record not only supports that conclusion, but compels it." Fahim v. United States Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (citation and quotation marks omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005). To the extent that the IJ's or BIA's decision was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

The IJ must make an explicit credibility determination. Yang v. United States Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). In this case, the IJ

3

explicitly found Chen's testimony not credible. Id.. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's [or BIA's] credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue, 401 F.3d at 1287. "The trier of fact must determine credibility, and [we] may not substitute its judgment for that of the [IJ or] BIA with respect to credibility findings." D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). In Nreka v. United States Att'y Gen., 408 F.3d 1361, 1369 (11th Cir. 2005), we held that the IJ's concerns about the credibility of the applicant on "key elements of the claim," and the applicant's failure to rebut these with sufficient corroborating evidence and explanation, supported the finding that the applicant did not qualify for asylum. While some Circuits have required the adverse credibility finding to go to the heart of the asylum claim, see, e.g., Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); see also Gui v. Immigration & Naturalization Serv., 280 F.3d 1217, 1225 (9th Cir. 2002), we have never adopted that test.

The REAL ID Act expressly adopted a credibility standard for applications made on or after May 11, 2005, setting out the following standard for determining credibility:

> Considering the totality of the circumstances, and all relevant factors,
> a trier of fact may base a credibility determination on the demeanor,
> candor, or responsiveness of the applicant or witness, the inherent

4

plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (as amended by the REAL ID Act § 101(a)(3)); see also 8 U.S.C. § 1231(b)(3)(C) (making § 1158(b)(1)(B)(iii) applicable to withholding of removal claims). The REAL ID Act is not applicable to Chen because his application was filed on March 10, 2004.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General and the Secretary of Homeland Security have discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).

A "refugee" is:

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion,

5

nationality, membership in a particular social group, or political opinion . . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284.

An alien is entitled to asylum if he can establish, with specific and credible evidence: (1) past persecution on account of his membership in a particular social group or other statutorily listed factor, or (2) a "well-founded fear" that his membership in a particular social group or other statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a)-(b); Al Najjar, 257 F.3d at 1287.

An alien is entitled to withholding of removal under the INA if he can show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); see also INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The alien bears the burden of demonstrating that it is "more likely than not" that he will be persecuted or tortured upon his return to the country in question. Fahim v. United States Att'y General, 278 F.3d 1216, 1218 (11th Cir. 2002). This is a more stringent burden than for asylum. Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). If the alien establishes past persecution based on a protected ground, there is a rebuttable presumption that his life or freedom would be threatened upon return to

6

his country.  See Mendoza, 327 F.3d at 1287; see also 8 C.F.R..§ 208.16(b)(1)(i). An alien who has not shown past persecution, however, may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground.  See 8 C.F.R. § 208.16(b)(2).  An alien cannot demonstrate that his life or freedom would be threatened if the IJ finds that the alien could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so.  Id. § 208.16(b)(2).

To obtain relief under the CAT, the burden is on the applicant to establish that it is "more likely than not" he will be tortured in the country of removal.  8 C.F.R. § 208.16(c)(2); Sanchez v. United States Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Id. § 208.18(a)(1).  Because the burden regarding withholding of removal and CAT relief is higher than the asylum standard, a petitioner who fails to establish eligibility for asylum is usually unable to carry the burden regarding withholding

7

of removal and CAT relief.  See Forgue, 401 F.3d at 1288 n.4; Al Najjar, 257 F.3d at 1303-04.

## II.

Chen's assertions that the IJ's adverse credibility finding was not based on any facts, that the IJ relied too heavily on various State Department and foreign country reports, and that the inconsistencies in the record are too minor to call his credibility into question are not supported by the record evidence.  Rather, Chen's claim was substantially undercut because there were so many objective inconsistencies in the record.  See D-Muhumed, 388 F.3d at 819.  For example, Chen stated that he believed his departure from China would have helped him and his wife have more children in the future, but, when questioned, he did not explain why this would be true.  In his asylum application statement, as well as during the removal hearing, Chen indicated that he and his wife wanted to have more children and that he thought leaving China was the best way to ensure their chances for more children.  Yet Chen—who left his wife and son—offered no indication that he intended for his wife to join him in the United States at a later date.

When Chen arrived in the United States he told an asylum officer that he ran from Chinese family planning officers who visited his house to inquire about why his wife had failed to show up for a routine checkup.  Chen said that the officers demanded that he pay a fine, and when he said that he did not have the money to

pay, they ransacked his house and threatened to call the police. In his written statement and at his removal hearing, however, Chen did not testify to those events. Rather, he testified that he did, in fact, pay the fine when the family planning officers visited his home in June 2003, and he provided documentary evidence to support that statement. In addition, Chen said that he ran away after family planning officials arrested his wife from his aunt's house in September 2003. Chen's only explanation for these consistencies was that he was nervous.

The record also reveals omissions material to Chen's asylum application. In Chen's written statement, he stated that only a vocal confrontation ensued when he tried to protect his wife from the arrest. At the removal hearing, however, Chen added facts to the events, specifically, that he engaged in a physical confrontation with the family planning officials, that he accidentally hit one of the officials, and that six neighbors came to help him.

Also, at the removal hearing, Chen testified that it took him more than 10 minutes to travel by foot, although without shoes, between his aunt's house and his first friend's house. Later, however, Chen testified that he spent approximately four hours wandering back and forth between his aunt's house and his first friend's house trying to see what happened following his wife's arrest and thinking about how he could protect his wife.

9

Upon arriving in the United States, Chen told the INS that someone had given him an airplane ticket to fly to the United States for free. Later, at the removal hearing, Chen testified that he paid a smuggler $60,000 to bring him to the United States. Chen did not offer an explanation for these inconsistencies.

In addition to the inconsistencies in Chen's statements and testimony, he was unable to provide basic information regarding his travels from China to the United States. Specifically, besides Thailand, Chen was unable to name any of the other countries through which he traveled on his way to the United States.

Moreover, inconsistencies in the documentary evidence raised doubts as to its authenticity. First, Chen's wife's identification number printed in the household booklet had three more numbers, which were interspersed throughout the sequence, than her identification number printed in her IUD booklet. Second, the State Department and the United Kingdom reports regarding China's family planning policies do not support Chen's assertion that his wife received an abortion certificate subsequent to undergoing a forced abortion. Rather, the reports support the government's contention that abortion certificates are issued in the case of a voluntary abortion, so that a woman can claim entitlement to two weeks worth of paid sick leave following the procedure. Third, the abortion certificate did not accurately reflect Chen's wife's age at the time of the abortion. Furthermore, Chen

10

gave conflicting testimony with regard to whether his wife or mother requested the abortion certificate, and what steps were taken to obtain the certificate.

For these reasons, regardless of which standard we choose to employ, Chen has not met his burden of demonstrating that the IJ's decision was not based on substantial evidence or specific, cogent reasons, as he has failed to either rebut or explain many of the inconsistencies in his testimony. See Forgue, 401 F.3d at 1287.

### III.

Accordingly, based on the above-mentioned inconsistencies, the record does not compel reversal of the IJ's adverse credibility determination. See Forgue, 401 F.3d at 1287. Thus, Chen failed to carry his burden of establishing past persecution or a well-founded fear of future persecution, which precludes him from being granted asylum. Consequently, because he did not establish that he was eligible for asylum, Chen's withholding of removal and CAT claims also fail. See Al Najjar, 257 F.3d at 1292-93; Sanchez, 392 F.3d at 438 . Accordingly, we deny the petition for review.

**PETITION DENIED.**