[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-12186
Non-Argument Calendar
_____

Agency No. A76-526-440

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2005
THOMAS K. KAHN
CLERK

SOTIR MUCI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 27, 2005)

Before TJOFLAT, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Sotir Muci, an Albanian citizen, petitions for review of the Immigration

Judge's ("IJ") order denying asylum relief, which became the final agency determination when the Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision. Muci argues that the IJ erred in finding that he was not eligible for asylum relief, and also claims that his due process rights were violated when a single BIA judge affirmed the IJ's decision without rendering a separate opinion. We find no merit in either of his arguments, and therefore deny the petition.

## I. Background

Muci entered the United States on December 31, 2000, using a false Slovenian passport, and applied for admission under the visa waiver program.[1] He applied for asylum on or about April 10, 2001. In his application for asylum and then in his testimony before the IJ, Muci claimed that he was persecuted by members of Albania's Socialist Party ("SP") because he was a member of the Democratic Party ("DP"). He claims that he became a member of the DP in 1996, participated in DP activities in his village, and campaigned on behalf of a DP candidate for parliament in the 1996 elections.

In the fall of 1996, Muci entered the army to complete his compulsory service after graduating from university. In March of 1997, during unrest in

---

[1]The visa waiver program allows aliens from certain countries to enter the United Sates for up to 90 days without a visa as nonimmigrant visitors. See 8 U.S.C. § 1187(a); 8 C.F.R. § 217 et seq.

Albania following the collapse of a number of large pyramid schemes, Muci's army unit was attacked by a rebel group attempting to seize weapons. Muci was in charge of a patrol group that helped thwart the attack and arrested some of the rebels. He testified that he knew the people he arrested because they lived in a village near his own. He also said that he knew they were members of the SP and they knew he was a DP member.

The day after the attack on his army unit, Muci heard rumors that more rebels were planning to attack the unit again. He claims that he feared for his safety and his family's safety, so he deserted his army unit and returned to his village. Later that day, armed rebels attacked the unit and several people were killed, including friends of the SP members Muci had arrested the day before. Muci claims that the SP members he had arrested blamed him for the deaths of their friends.

Muci alleged that in July of 1997, after he returned to his village to work in his father's shoe shop, three people came to the shop, vandalized it, and attacked him and his father. One of the attackers kicked Muci and held a knife to his arm. Muci later sought treatment at a hospital. Muci recognized two of the three as SP members he had arrested in the attack on his army unit. Muci also said that in May of 1997, three unidentified people had robbed and damaged the shop.

Muci testified that he left the country shortly after the July attack because he

was afraid he would be killed. He traveled first to Greece and then to England. In the summer of 1999, he briefly returned to Albania because his father was ill. When he got there, his father told him that people were asking for him and wanted to know where he was. The SP was in power at the time. Muci said that he was again afraid to stay, and left a month later. When he arrived in England, Muci claimed to be from Kosovo and applied for asylum, allegedly following advice from people who helped him. After the war in Kosovo ended, he was told he had to leave the country. Afraid that he would be sent to Kosovo, he obtained a false Slovenian passport and traveled to the United States.

During the hearing, the IJ asked Muci why he could not move to another part of the country to get away from the people who had attacked him, if they were only in his village. Muci responded that Albania was a small country where everyone knew everyone, and said it was impossible to hide. When asked what would happen if he returned to Albania under the present country conditions, Muci said that he would be killed because the SP is in power and the people he arrested continue to blame him for the deaths of their friends. Muci also said that there was a tradition of blood feud in Albania, and that such feuds were still common.

In support of his application, Muci also presented documents verifying his DP membership, his army service and desertion, and his participation in the arrests of the attacking rebels. He also produced a declaration from the DP candidate for

4

whom he had campaigned, and a declaration from his father.

The IJ denied Muci's application for asylum and withholding of removal under the INA and the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), finding that Muci had failed to establish that he was persecuted on account of his political opinion. The BIA affirmed without an opinion.

## II.  Discussion

Because Muci applied to enter the United States under the visa waiver program, he was placed into asylum-only proceedings, pursuant to agency regulations. See 8 C.F.R. § 208.2(c)(3)(i).  The denial of asylum and withholding of removal in such a situation qualifies as a final order of removal for jurisdictional purposes. Nreka v. U.S. Att'y Gen., __ F.3d ___, 2005 WL 1138770, at *3 (11th Cir. 2005).  We therefore have jurisdiction over Muci's claims pursuant to 8 U.S.C. § 1252(a)(1). See id.

When the BIA summarily adopts the IJ's opinion without rendering its own decision, we review the IJ's decision. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). We review the IJ's legal conclusions de novo, and its factual determinations for substantial evidence. Id. at 817-18.  We "must affirm the [IJ]'s decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d

5

1262, 1284 (11th Cir. 2001) (internal quotation marks omitted).  Under this standard, the IJ's decision denying asylum relief can be reversed only if "the evidence . . . presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."  INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).  See also id. at 481, n.1.

To qualify for asylum, Muci must show that he is a "refugee," which the INA defines as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  Muci bears the burden of demonstrating his refugee status with specific and credible evidence.  See 8 C.F.R. § 208.13(a); Al Najjar, 257 F.3d at 1287.  To establish that the persecution or fear of persecution is "on account of" the protected ground of his political opinion, Muci must provide "*some* evidence . . . direct or circumstantial," that his persecutors were motivated by his political opinion.  Elias-Zacarias, 502 U.S. at 483.

The IJ found that Muci had failed to establish this required nexus, explaining his conclusion as follows:

6

> The applicant essentially fears local individuals who blame him for the deaths of some of their friends and colleagues. He has no real reason to fear the Socialist Party generally. It is these individuals that appear to have an axe to grind against him or . . . might have him involved in a 'blood feud.' . . . The fact that these individuals who inquire about him and may possibly wish to harm him, are Socialists and the fact that he is democratic is, frankly, incidental to his claim. While there [sic] being Socialists may provide them with impunity, the fact that he is a member of the Democratic Party does not appear to be the thing that provides them with the motive. There is no showing whatsoever that his political affiliation or his alleged political activities are the cause of his problems.

IJ Order at 10. We find that the evidence Muci presented does not compel the conclusion that any persecution he either suffered or fears suffering is "on account of" his political opinion. He said several times during his testimony that the SP members who attacked him targeted him because they blamed him for the deaths of their friends. He also acknowledged that there is a tradition of blood feud in Albania. Furthermore, although he presented evidence that he was active in the DP and testified that his attackers were SP members, he presented no evidence that his attackers were motivated by his political opinion. Because the evidence does not compel a different conclusion than the IJ reached, we find no error in the IJ's determination that Muci failed to establish the required causal nexus.[2]

Muci also argues that the BIA's single-judge summary affirmance of the IJ's

---

[2]Because Muci's petition for review does not raise any argument challenging the denial of withholding of removal or relief under the CAT, we consider those claims abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

denial of relief violated his due process rights.  This circuit has already considered and rejected that argument.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1288-89 (11th Cir. 2003).

**PETITION DENIED.**