[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14311
Non-Argument Calendar

_____

BIA No. A96-435-198

KIMETE SLAMNIKU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 13, 2007)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Petitioner Kimete Slamniku, through counsel, seeks review of the decision

of the Board of Immigration Appeals ("BIA") dismissing her appeal from the order of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the U.N. Convention Against Torture ("CAT").

Petitioner is a native of former Serbia-Montenegro.[1]  On September 9, 2003, she attempted to enter the United States using a fraudulent passport.  On that same day, immigration officers interviewed her, and she stated that she and her parents were citizens of former Yugoslavia, but she wanted to live in the United States.  At her credible fear interview, Petitioner stated that she was an ethnic Albanian and, because of her ethnicity, the Serbians had threatened to kill her and her family unless they left Yugoslavia.  She reported that, when her family fled Yugoslavia to stay in Albania, Serbians had detained her brother, her fiancee was killed by the Serbian police, and when her family returned home after the conflict was over, their house had been burned down.  She further reported that her father and brother had problems with the Kosovo Liberation Army ("KLA"), which consisted of extremist ethnic Albanians, because they had not joined the KLA during the war with the Serbians in Kosovo.   She also explained that, in July of 2003, she was arrested, but unharmed, by three unidentified men, who probably were KLA

---

[1]  In June 2006, Serbia and Montenegro separated.  Kosovo is a province of Serbia and is populated by 1.5 million ethnic Albanians and 80,000 Serbians.

members, and was accused of being "the daughter of a spy and servant of the Serbs."

On September 30, 2003, the former Immigration and Naturalization Service, now the Department of Homeland Security ("DHS"), issued Petitioner a Notice to Appear, charging her as removable because she used fraudulent documents in attempting to enter the United States. Petitioner thereafter filed an application for asylum, withholding of removal, and CAT relief, based on her religion, political opinion, and membership in a particular social group. She stated that that she was (1) born in Kosovo; (2) a citizen of Serbia-Montenegro; (3) of Yugoslovian nationality; (4) of Albanian ethnicity; and (5) Muslim.

At an initial hearing, Petitioner admitted the allegations of the Notice to Appear and declined to designate a country of removal. The DHS, however, designated Serbia-Montenegro. At her subsequent removal hearing, Petitioner reiterated what she said in her credible fear interview, adding that she began to have problems in Kosovo when she and her family joined the Democratic League of Kosovo ("LDK"), which was an ethnic Albanian party that "was established to defend the human rights of people in Kosov[o], because [they] were oppressed under the Serbian rule." According to her, the war in Kosovo was between the Serbian Army and the ethnic Albanians, and occurred from 1996 through 1998. She reported that her family fled to Albania for three months, and after they

3

returned to Kosovo, the Serbians told her family that they should not have returned, and the ethnic Albanians who had fought in the war told her family that they were traitors for not joining the fight and should not have returned. She explained that ex-soldiers, both Serbian and former KLA members, mistreated her and her family everywhere that they went. Petitioner also said that, on three occasions, members of the KLA hit her father's car while he was driving to work; on the third occasion, they told him that he could not stay in Kosovo because he was a traitor. Petitioner said that, if she was returned to Kosovo, she could not live there and had no life remaining there. She had spoken to her parents, who remained in Kosovo, and they told her not to return because they continued to be mistreated and "they" might send her somewhere to be a prostitute.

The IJ found Petitioner's testimony not credible, denied her application for asylum in full, and ordered her removal. In his decision, which he handed down on February 16, 2005, the IJ stated that Petitioner was a native and citizen of Albania.

Petitioner appealed the IJ's decision to the BIA. There, she contended that (1) the IJ erred by finding that she was a native and citizen of Albania, rather than "a native of Yugoslavia and citizen of Serbia & Montenegro"; (2) she testified credibly; and (3) she was persecuted on account of her ethnicity.

On July 11, 2006, the BIA dismissed the appeal. In doing so, the BIA assumed that Petitioner's testimony was credible. Having done that, the BIA

4

explicitly found that Petitioner was an ethnic Albanian, "a native of Yugoslavia and citizen of Serbia-Montenegro," and that the conditions of Serbia-Montenegro, which had changed, did not support her claim that she would be persecuted as an ethnic Albanian.

In her petition to us, Petitioner contends first that her procedural due process rights were violated because she was not given the opportunity to present evidence "directed against her removal to Albania, the country to which [the IJ] intended to issue a removal order." She also contends that she properly exhausted her administrative remedies as to this issue, and even if she did not, we are "obligated" to review this issue because she (1) was not given the opportunity to apply for relief from removal to the country that she was ordered removed, and (2) "will suffer irreparable harm if a proper review of her . . . claims is not completed."

Our first task in considering the petition at hand is to determine whether we have subject matter jurisdiction. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." Immigration and Nationality Act ("INA") § 242(d)(1), 8 U.S.C. § 1252(d)(1). This requirement is jurisdictional and bars review of claims not raised before the BIA. Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003). The exhaustion requirement gives the BIA the opportunity to discover and correct its

5

own error. Id. at 1325. The "exhaustion requirement ensures [that DHS] has had a full opportunity to consider a petitioner's claims. . . ." Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (internal citations and quotations omitted). In Amaya-Artunduaga, the petitioner claimed that the IJ's bias against him resulted in a fundamentally unfair proceeding. Id. at 1251. We first clarified that "the goals of exhaustion are better served by . . . declining to review claims a petitioner, without excuse or exception, failed to present before the BIA, even if the BIA addressed the underlying issue sua sponte." Id. at 1251. We then said that a petitioner's allegation "that he was denied a full and fair hearing before a neutral factfinder" is the type of procedural due process claim that requires exhaustion, and we subsequently dismissed the petition for lack of jurisdiction. Id.

We lack jurisdiction to review Petitioner's procedural due process claim because she did not raise the claim in her notice of appeal or brief before the BIA. Although she argued, in her notice of appeal, that the IJ erred by holding that she was a native and citizen of Albania, rather than Serbia-Montenegro, she failed to allege a violation of her procedural due process rights or assert that she was denied a full and fair hearing. We therefore dismiss the procedural due process claim for lack of jurisdiction.

Petitioner contends that only the DHS may issue a notice to appear, and when the IJ found that she was a native and citizen of a country that had not been

6

charged in the notice to appear, the IJ, without legal authority, "essentially lodged his own factual allegations against [her]." She further contends that the error suggests that the IJ mistakenly believed "that he was assessing a case involving Albania citizenship and perhaps even Albanian country conditions."

We review "only the decision of the BIA, 'except to the extent that it expressly adopts the IJ's opinion.'" Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1368 (11th Cir. 2005). Because, in this case, the BIA issued its own order, we review its reasoning. The BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (internal quotations omitted). "To reverse the [BIA's] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006).

To the extent that Petitioner claims that the IJ erred by finding that she was a native and citizen of Albania, rather than Serbia-Montenegro, we do not review the finding the IJ's decision was not the final removal order. The BIA issued the final order and it correctly determined that Petitioner was a native of former Yugoslavia

7

and citizen of Serbia-Montenegro.  Moreover, nothing in the record compels the reversal of the BIA's finding that the conditions of Serbia-Montenegro did not support her claim that she would be persecuted as an ethnic Albanian. We therefore deny review of this claim.

Petitioner's final point is that the IJ's error in ordering her removed to Albania suggests that the IJ "failed to provide even the most basic assessment of her . . . claims."  She contends that (1) it is unclear whether the IJ understood that Serbia-Montenegro and Albania were separate nations; and (2) the BIA "should have taken administrative notice" of that fact and corrected the IJ's error.

As noted above, because the BIA's order is the final removal order, that is the decision we review.

The BIA specified that (1) Petitioner was a native of former Yugoslavia and citizen of Serbia-Montenegro, and that (2) the conditions of Serbia-Montenegro did not support her claim that she would be persecuted as an ethnic. Nothing in the record compels reversal of this finding.

The petition is accordingly

DISMISSED IN PART; DENIED IN PART.

8