[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 3, 2009
THOMAS K. KAHN
CLERK

No. 08-14055
Non-Argument Calendar
_____

Agency No. A98-359-656


SOUMITRA FAYAZI,

                                                        Petitioner,


versus


U.S. ATTORNEY GENERAL,

                                                        Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 3, 2009)

Before BIRCH, DUBINA and ANDERSON, Circuit Judges.

PER CURIAM:

Soumitra Fayazi ("Fayazi"), a native and citizen of Iran, seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c). Fayazi argues that the IJ and the BIA erred in finding that her testimony was not credible and that the IJ erred in refusing to allow testimony from one of her witnesses. We find both arguments to be without merit. We also note that Fayazi advances several explanations that might have incorrectly influenced the IJ's adverse credibility determination. Because these claims were not raised before the BIA, however, we are not at liberty to review them here. Accordingly, we DENY the petition in part, and DISMISS it in part.

## I. BACKGROUND

Fayazi entered the United States on or about 14 September 2004 with a nonimmigrant K-1 fiancee visa granting her authorization to remain in the United States until 13 December 2004. See Administrative Record ("AR") at 281. Fayazi filed an application for asylum and withholding of removal under the INA and CAT on 7 December 2004. Id. at 265-74. She claimed eligibility based on her fear

of persecution in Iran on account of her conversion from Islam to Christianity.  Id. at 270.

In her application, Fayazi stated that she had worked for Tirdad Transportation Company ("TTC") in Iran until March 2004.  Id. at 269.  Her asylum application included the following assertions, among others: (1) one of her friends was arrested and tortured for three days after leaving an underground church meeting; (2) the Iranian Revolutionary Guard ("IRG") routinely checks the identity of everyone who enters a church; (3) conversion from Islam to Christianity is punishable by death in Iran; and (4) in 2004, based on a tip from her coworker, the IRG searched Fayazi's parents' house in an effort to find her, confiscated all of her books, and damaged her parent's furniture in the process.  Id. at 270-71.

At her initial hearing before the IJ, Fayazi, proceeding pro se, conceded her removability.  Id. at 110-11.  Fayazi testified that she was baptized a Christian in March 1999, after previously familiarizing herself with the faith through self-study and interaction with two Christian neighbors.  Id. at 127-31.  According to Fayazi, she traveled to Dubai in August 2004 in order to obtain her K1 visa.  Id. at 133-34.  While there, Fayazi claimed that her mother in Iran called her and informed her that the IRG had raided the family home and had confiscated all of her books, including her Bible.  Id. at 135.  Fayazi's testimony did not include any mention of broken furniture, as detailed in her initial asylum application.

3

After the phone call, Fayazi informed her fiancee that she had converted to Christianity, that the Iranian government knew of her conversion and was looking for her, and that Christian converts are considered guilty of apostasy and executed in Iran. Id. at 136. Nevertheless, she returned to Iran and stayed there, without incident, until her departure for the United States about a month later. Id. at 137-38. While in Iran, her fiancee broke off their engagement. Fayazi claimed to have had no contact with him since the termination of the engagement in August 2004. Id. at 138.

According to Fayazi, she encountered no problems when she flew out of Tehran into Dubai and out of Tehran and into the United States, despite being actively sought by the IRG. Id. at 142-43. When questioned about her decision to return to Iran from Dubai in the face of possible execution by the Iranian government, Fayazi claimed to have had nowhere else to go at the time. Id. at 144-45, 149. When asked why she encountered no difficulties in Iran for almost four years after her conversion, Fayazi stated that she kept her religious beliefs to herself during that period. Id. at 146.

Fayazi then divulged her belief that the IRG raid on her family's home in August 2004 was triggered by a tip from a coworker with whom she had discussed her conversion in August 2003. Id. at 146, 154. Fayazi stated that she was fired from her job at TTC in the summer of 2004 as a result of being reported by this

4

coworker. Id. at 147-49. This account differs from that provided in her asylum application. In her asylum application, Fayazi does not mention being fired from her position at all but indicates only that her employment ended in March 2004. Id. at 269. Fayazi ultimately conceded that she was fired from her job before she made the trip to Dubai in August 2004. Id. at 149. Finally, Fayazi's testimony before the IJ did not include any reference to either the arrest and torture of her friend in 1999 or Fayazi's harassment by the IRG, although both events were documented in her asylum application. Id. at 270.

The documentary evidence on record before the IJ consisted of the following: 1) the 2003 Department of State International Religious Freedom Report ("2003 Freedom Report"); 2) the 2005 Department of State International Religious Freedom Report ("2005 Freedom Report"); 3) the 2005 Department of State Country Report on Human Rights Practices for Iran ("2005 Human Rights Report"); 4) three letters from members of Morningside Baptist Church in Spartanburg, South Carolina; 5) a copy of Fayazi's passport and I-94; 6) a copy of her Iranian identification certificate; and 7) a copy of her university diploma. Id. at 173-234. In addition, Fayazi sought to have a friend from South Carolina testify on her behalf. The IJ, after hearing the friend's proffered testimony, determined that the testimony would be repetitious and did not allow it. Id. at 82-83. After consideration of the documentary evidence and Fayazi's testimony, the IJ found

5

Fayazi not credible due to numerous inconsistencies in her testimony, omissions in her asylum application and her testimony, implausibilities in her story, and misrepresentations made to customs officials when entering the United States. Id. at 90-101. Fayazi appealed the IJ's decision to the BIA.

The BIA affirmed the IJ's decision and dismissed Fayazi's appeal. The BIA did not adopt or affirm the IJ's findings relating to certain inconsistencies in Fayazi's testimony, however. Id. at 3. Nevertheless, the BIA found no clear error with the IJ's adverse credibility determination due to Fayazi's omission of certain details in her persecution claim and her failure to adequately explain those omissions in her testimony before the IJ. Id. In particular, the BIA noted the following omissions: 1) Fayazi's omission in her asylum application of the fact that she was fired from her job as a result of her coworker reporting her conversion to Christianity; and 2) her failure to provide details in her testimony concerning the damage done to her family's furniture during the IRG's raid on her family's house. Id. Moreover, the BIA found "no evidence in the record that [Iranian] authorities currently are looking for or otherwise have a continuing interest in [Fayazi]." Id. Finally, the BIA determined that the record evidence did not establish that it was more likely than not that Fayazi would be tortured if returned to Iran. Id.

## II. DISCUSSION

Fayazi challenges the BIA's affirmance of the IJ's adverse credibility determination and the denial of her application for asylum, withholding of removal and relief under the CAT. Fayazi also contends that the IJ erred in precluding her from calling a witness to testify on her behalf. Although not styled as such, we will analyze her argument concerning the exclusion of evidence as a due process challenge.

### A. Standard of Review

We review administrative fact findings, including credibility determinations, under the highly deferential substantial evidence test, which requires that the record evidence be viewed in the light most favorable to the agency's decision. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Facts not raised in the administrative forum will not be considered, nor will we "reweigh the evidence from scratch." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) (quotation marks and citation omitted). We review only the BIA's decision, unless the BIA expressly adopted the IJ's decision. Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Al Najjar v. Aschroft, 257 F.3d 1262, 1284 (11th Cir. 2001). As we have stated before, we lack jurisdiction

7

to review claims that were not raised before the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam).

We are not permitted to substitute our judgment for that of the BIA with respect to credibility findings, and we cannot overturn a credibility finding unless the record compels it. See Forgue, 401 F.3d at 1287. When an applicant does not produce any evidence of persecution other than her testimony, an adverse credibility determination is sufficient to support the denial of an asylum application, but, if she produces corroborating evidence of persecution, the IJ must consider the evidence and cannot deny the application based solely on the credibility determination.[1] Id. The IJ is required to provide "specific, cogent reasons" for making an adverse credibility finding, and the petitioner bears the burden of demonstrating that the credibility finding was not supported by specific, cogent reasons or was not based on substantial evidence. Id. As we have said in the past, "[i]ndications of reliable testimony include consistency on direct

---

[1] In Forgue, the petitioner, who sought political asylum, withholding of removal, and relief under CAT, testified at his asylum hearing that (1) he had been an election monitor in Haiti, (2) he refused to allow a group of individuals, including a candidate, to vote at the location that he was monitoring because it was not their assigned polling place, and (3) they responded by dousing him with acid, burning his house, and beating up his son. Id. at 1285. The IJ found that Forgue's testimony was not credible because he did not include in his asylum application the facts that (1) he had been a poll worker, (2) he had been doused with acid, or (3) his son had been assaulted. Id. We concluded that the omission of these facts from Forgue's asylum application provided substantial evidence to support the adverse credibility determination and, because he did not present corroborating evidence of his persecution, the IJ did not err in denying him relief based on the credibility determination. Id. at 1287-88.

8

examination, consistency with the written application, and the absence of embellishments." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam).

As regards Fayazi's procedural due process rights, "[i]t is well settled that individuals in deportation proceedings are entitled to due process of the law under the Fifth Amendment." Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1281 (11th Cir. 2007). We have held that in order "[t]o prevail on a procedural due process challenge, the petitioner must show that [she] was substantially prejudiced by the violation." Id. In addition, we have also noted that "the deprivation of . . . the ability to present evidence on one's behalf in a removal proceeding would, under certain circumstances, constitute a due process violation." Id. at 1282.

B. Asylum, Withholding of Removal and CAT Framework

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1); 8 U.S.C. § 1158(a)(1). The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1); 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . ., and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race,

9

religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving that he or she qualifies as a "refugee." 8 C.F.R. § 208.13(a). In order to meet this burden, "the applicant must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007).

"Persecution" is not defined in the INA, but we have described it as "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotations marks and citation omitted). We have also noted that "mere harassment does not amount to persecution." Id. (quotation marks, alteration, and citation omitted). In determining whether an alien has suffered past persecution, we consider the cumulative impact of the alleged incidents of persecution. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861-62 (11th Cir. 2007) (per curiam).

"An applicant who has demonstrated past persecution is presumed to have a well-founded fear of future persecution." Mejia, 498 F.3d at 1257. The presumption can be rebutted by a showing that "[t]here has been a fundamental

10

change in circumstances such that the applicant no longer has a well-founded fear of persecution" or the "applicant could avoid future persecution by relocating to another part of the applicant's country of nationality."  8 C.F.R. § 208.13(b)(1)(i).

To establish a well-founded fear of future persecution, an alien "need only show that there is a reasonable possibility of suffering such persecution if he or she were to return to that country." Mejia, 498 F.3d at 1256 (quotation marks, alteration, and citation omitted).  The alien must establish a fear that is both "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." Id.  "[T]he objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation marks omitted).  An alien must establish a nexus between a statutorily protected ground and the feared persecution and can do so by presenting "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" such ground. Sepulveda, 401 F.3d at 1231 (quotation marks and citation omitted).  An alien does not have to prove he or she would be singled out if he or she can establish a pattern or practice of persecution of a group of which he or she is a member.  8 C.F.R. § 208.13(b)(2)(iii).  If the applicant makes an initial showing of a fear of future persecution, "the government may rebut the applicant's evidence by

11

demonstrating, based upon a preponderance of the evidence, that the applicant could avoid future persecution by relocating within the country if, under all the circumstances, it would be reasonable to expect the applicant to do so." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1008 (11th Cir. 2008) (quotation marks and citation omitted).

To qualify for withholding of removal, an alien must show that it is more likely than not that if returned to his or her country, the alien's life or freedom would be threatened on account of a statutorily protected ground. See INA § 241(b)(3), 8 U.S.C. § 1231(b)(3)(A); Sepulveda, 401 F.3d at 1232. A failure to meet the lower burden for asylum necessarily amounts to a failure to meet the more stringent burden for withholding of removal. See Sepulveda, 401 F.3d at 1232-33. Finally, CAT relief requires that a petitioner show that she "more likely than not" will be tortured upon return to her country of origin and that such torture will be "inflicted by or at the instigation of or with the consent or acquiescence of a public official." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004) (quotation marks and citation omitted).

C. Findings

In this case, we conclude that the BIA provided specific, cogent reasons for affirming the IJ's adverse credibility finding. The BIA highlighted two key omissions in Fayazi's testimony before the IJ: 1) being fired from her job because

12

of her religious conversion, and 2) the destruction of her family's furniture by the IRG. These omissions contrast sharply with the information that Fayazi provided in her initial asylum application. Indeed, Fayazi claims to have suffered only two major incidents of persecution because of her religious convictions and the two glaring omissions noted by the BIA concern those same two incidents. As we have said before, where the IJ and the BIA have express concerns about the credibility of a petitioner "on key elements of the claim" and the petitioner "fail[s] to rebut these [concerns] with sufficient corroborating evidence and explanation," we cannot say that the record compels overturning the credibility determination. Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1369 (11th Cir. 2005).

We do recognize that Fayazi did advance several explanations for her omissions in her brief on appeal, including the fact that she was proceeding pro se, she was nervous, and she had difficulty understanding the interpreter at her proceeding before the IJ. However, given that none of these grounds were raised before the BIA, we lack jurisdiction to consider them here. See Amaya-Artunduaga, 463 F.3d at 1250.

As far as Fayazi's due process argument goes, we are not convinced that Fayazi was prejudiced by the IJ's exclusion of her witness. At her hearing, the IJ listened to the proffered testimony of Fayazi's witness and then asked Fayazi if her witness would add anything "new or different" from Fayazi's testimony. AR at

13

164-65. Fayazi indicated that her witness would testify about the "present situation of Iran" – a topic already covered in some detail by Fayazi herself. Id. at 164. The IJ determined that such testimony would be repetitious and excluded the witness. Fayazi responded, "That's fine. Okay." Id. at 165. We conclude that the IJ did not err in excluding the witness.

In sum, we find that substantial evidence supports the BIA's affirmance of the IJ's adverse credibility determination. We conclude that the IJ provided specific, cogent reasons for his decision and, given the highly deferential nature of our review, we are not compelled to disturb it. Moreover, our review of the record reveals no other evidence of persecution other than Fayazi's testimony. As such, Fayazi has not met her burden of demonstrating that the credibility finding was not supported by specific, cogent reasons or was not based on substantial evidence. Because Fayazi did not produce corroborating evidence for the IJ to consider and the IJ found her testimony to be incredible, substantial evidence also supports the IJ's denial of Fayazi's asylum application. Likewise, "it is axiomatic that where an applicant fails to meet the burden for asylum, [she] necessarily cannot meet the more stringent burden for withholding of removal." Amaya-Artunduaga, 463 F.3d at 1249 n.3. Finally, because the record contains no evidence in support of Fayazi's petition for relief under the CAT, we conclude that the BIA did not err in affirming the IJ's denial of such relief.

14

### III. CONCLUSION

Fayazi seeks review of the BIA's decision affirming the IJ's denial of her application for asylum and withholding of removal and relief under the CAT. We conclude that the IJ and the BIA did not err in finding that her testimony was not credible and that the IJ correctly refused to allow testimony from one of her witnesses. We also note that Fayazi advances several claims not yet fully exhausted before the BIA. Accordingly, we DENY the petition in part, and DISMISS it in part.

**DENIED, in part and DISMISSED, in part.**