[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11654
_____

Agency No. A088-018-228

ROBERT CHRISTIAN NUNEZ-CASTRO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 15, 2013)

Before WILSON and HILL, Circuit Judges, and HUCK,* District Judge.

PER CURIAM:

_____

* Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

Robert Christian Nunez-Castro, a native and citizen of Colombia, seeks review of the Board of Immigration Appeals's (BIA) dismissal of his appeal from the Immigration Judge's (IJ) denial of his application for asylum under the Immigration and Nationality Act (INA), § 208(a), 8 U.S.C. § 1158(a), withholding of removal, INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 208.16(c).  On appeal, Nunez-Castro argues (1) that the BIA's adverse credibility determination and conclusion that he failed to establish past persecution or fear of future persecution are not supported by substantial evidence; and (2) that the BIA failed to address his claims that the IJ violated his due process and Sixth Amendment rights by denying him the opportunity to fully explain inconsistencies, and by failing to permit his counsel to respond to the IJ's line of questioning.  After a thorough review of the record, and with the benefit of oral argument, we affirm.

## I. BACKGROUND

On December 1, 2006, Nunez-Castro entered the United States without inspection.  Nunez-Castro completed a credible fear interview with an asylum officer on January 18, 2007.  The interview was conducted in Spanish.  Nunez-Castro told the interviewer that the Auto-Defensas Unitas de Colombia (AUC)

wanted to kill him because he was a member of the United Popular Movement (MPU), a political group located in the department of Valle, which is on the west coast of Colombia.

During this interview, Nunez-Castro detailed that on April 2, 2006, while sitting outside of a bar, two or three men on motorcycles drove up and starting shooting at him and his dining companion, an MPU sponsor. The sponsor was killed, and Nunez-Castro was shot in the back as he fled the scene. Two months after the attack, Nunez-Castro received a threatening phone call. The unidentified caller warned that Nunez-Castro would be killed if he did not stop his political activities. As a result, Nunez-Castro moved to Bogotá. Shortly thereafter, sometime in June 2006, Nunez-Castro said he received a second threatening phone call. This second phone call presumably prompted Nunez-Castro to move to the United States.

On August 16, 2007, Nuenz-Castro, through counsel, filed an application for asylum, withholding of removal based on political opinion and membership in a particular social group, and CAT relief. He submitted background country reports, newspaper articles, medical reports, and statements from himself and friends in support of his application.

3

The asylum hearing was held on November 5, 2009.  Nunez-Castro testified about the April 2 attack.  He stated that he received a call from the AUC "weeks" after the attack, threatening that if he did not stop his political work he would suffer the same fate as the MPU sponsor.  He testified that he laid low for two months and then moved to Bogotá.

On cross-examination, Nunez-Castro said the first threatening phone call occurred two days after the attack.  When asked whether he received a second threatening call after his move to Bogotá, Nunez-Castro testified that he did not receive a second call.  He also stated that the MPU only operated in the department of Valle and was not a national organization.  At the conclusion of the hearing, the IJ denied Nunez-Castro's application for asylum, withholding of removal, and CAT relief.  Nunez-Castro was ordered removed from the United States to Colombia.

Nunez-Castro appealed the IJ's order.  On March 14, 2011, the BIA dismissed Nunez-Castro's appeal, finding that the IJ did not commit plain error when it found Nunez-Castro incredible.  The BIA also agreed with the IJ's findings that Nunez-Castro: (1) did not meet his burden of proof for asylum; (2) did not establish eligibility for withholding of removal; and (3) did not establish that it was

4

"more likely than not" that he would be tortured by or with the acquiescence of the Colombia authorities (CAT relief).[1]

## II. STANDARD OF REVIEW

Where "the BIA issues its own opinion, we review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision." *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (internal quotation marks omitted). We review factual determinations under the substantial evidence test. *Carrizo*, 652 F.3d at 1330. "Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1323–24 (11th Cir. 2010) (internal quotation marks omitted). We will affirm a decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Carrizo*, 652 F.3d at 1330 (internal quotation marks omitted). "Under this test, we view the record evidence in the light most favorable to the decision and draw all reasonable inferences in favor thereof." *Id.* "We will reverse an IJ's factual findings only if the evidence compels a reasonable fact finder to find otherwise." *Id.* at 1331. "The mere fact that the record may support a contrary conclusion is not enough to

---

[1] On appeal, we lack jurisdiction to consider Nunez-Castro's withholding of removal and CAT claims. Although the BIA ruled on the IJ's denial of both claims *sua sponte*, any claim regarding these issues is unexhausted because Nunez-Castro failed to raise these issues before the BIA. *See Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1330 n.1 (11th Cir. 2011) (per curiam). Moreover, because he failed to address either issue in his brief to this court, he has abandoned both issues. *See id.*

justify a reversal." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (per curiam); *see also Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (concluding that, while the evidence may have supported a finding that a bombing was directed at the petitioner on account of her political activity, it did not compel a reversal of the IJ's conclusion to the contrary).

## III. DISCUSSION

### A. Asylum

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General or Secretary of DHS has discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The definition of "refugee" includes

> any person who is outside any country of such person's nationality
> . . . and who is unable or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that
> country because of persecution or a well-founded fear of
> persecution on account of race, religion, nationality, membership
> in a particular social group, or political opinion . . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a). In order to meet this burden, the applicant must prove, with credible evidence, that either: "(1) he suffered past persecution on account of his political opinion, or (2) he has a

6

well-founded fear that his political opinion will cause him to be persecuted."

*Carrizo*, 652 F.3d at 1331 (internal quotation marks omitted); *see also* 8 C.F.R.

§ 208.13(b).  If an applicant meets this burden, the actual grant of asylum is a

matter of discretion.  *Sepulveda*, 401 F.3d at 1231; *see also* 8 C.F.R. § 208.13(a),

(b).  The discretionary judgment whether to grant asylum is conclusive unless

manifestly contrary to the law and an abuse of discretion.  8 U.S.C.

§ 1252(b)(4)(D); *Sepulveda*, 401 F.3d at 1231.

### 1. Adverse Credibility

Nunez-Castro argues that the BIA abused its discretion when it affirmed the

IJ's adverse credibility determination.  The REAL ID Act of 2005, Pub. L. No.

109-13 § 101, 119 Stat. 302 (2005), controls credibility determinations with regard

to applications for asylum filed after May 11, 2005.  8 U.S.C. § 1158(b)(1)(B)(iii).

A credibility determination may be based on the totality of the circumstances,

including: (1) the demeanor, candor, and responsiveness of the applicant; (2) the

plausibility of the applicant's account; (3) the consistency between the applicant's

written and oral statements; (4) the internal consistency of each statement; (5) the

consistency of the applicant's statements with other record evidence, including

country reports; and (6) any inconsistencies, inaccuracies, or falsehoods, regardless

of whether they relate to the heart of an applicant's claim.  INA § 208(b)(1)(B)(iii),

7

8 U.S.C. § 1158(b)(1)(B)(iii); *Carrizo*, 652 F.3d at 1331–32.  An IJ's credibility determination must rest on substantial evidence.  *Todorovic*, 621 F.3d at 1324.

If credible, an alien's testimony may be sufficient, without corroboration, to satisfy his burden of proof.  *Id.*  "Conversely, a denial of relief can be based entirely on an adverse credibility determination if the applicant fails to provide sufficient corroborating evidence."  *Id.*  If, however, the applicant produces corroborating evidence of persecution, the IJ must consider the evidence and cannot deny the application based solely on the credibility determination.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).  "[T]he IJ and the BIA need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented, but they must consider the issues raised and announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted."  *Carrizo*, 652 F.3d at 1332 (internal quotation marks omitted).

To rebut an adverse credibility finding, an applicant must show that it was not supported by "specific, cogent reasons" or was not based on substantial evidence.  *Id.* (internal quotation marks omitted).  Simply offering a "tenable" explanation for inconsistencies in one's testimony does not compel reversal of an adverse credibility determination.  *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228,

8

1233 (11th Cir. 2006) (per curiam). Likewise, where an IJ expresses concerns about a petitioner's credibility on key elements of the claim, and the petitioner fails to rebut these concerns with sufficient corroborating evidence and explanation, the record will not compel overturning the credibility determination. *Nreka v. U.S. Att'y Gen.*, 408 F.3d 1361, 1369 (11th Cir. 2005).

Here, the IJ's adverse credibility determination was based on: (1) inconsistencies between Nunez-Castro's credible fear interview and merits hearing testimony, i.e., discrepancies as to when he received an initial threatening phone call and whether he received a second such call; and (2) the fact that neither of the newspaper articles he submitted mentioned a political motivation behind the killing of the MPU sponsor. The omission of certain details in the newspaper articles may be insufficient, standing alone, to support an adverse credibility determination. After all, it is possible that many facts were not known to the reporters at the times the articles were written. The inconsistencies in Nunez-Castro's accounts of having received one or more threats, however, were specific, cogent, and sufficient—even if not overwhelmingly so—to support the IJ's determination. Nunez-Castro's tenable explanations for these inconsistencies— that they resulted from misunderstandings or mistranslations—do not compel reversal of the IJ's adverse credibility determination. *See Chen*, 463 F.3d at 1233.

9

Nunez-Castro has not pointed to any corroborating evidence in the record sufficient to rebut the IJ's concerns with respect to a key element of his claim. *See Nreka*, 408 F.3d at 1369. Moreover, although Nunez-Castro argues that his credible fear interview was tainted by misunderstanding and mistranslation, he does not identify any specific material errors, or the manner in which any such mistakes contributed to the IJ's purported errors.

In addition, Nunez-Castro argues that the BIA abused its discretion when it affirmed the IJ's adverse credibility determination without a full review of the administrative record. This argument fails. The IJ and the BIA need not address specifically each claim made or each piece of evidence presented. *See Carrizo*, 652 F.3d at 1332. Nevertheless, the IJ discussed Nunez-Castro's testimony, newspaper articles he submitted, and the 2008 U.S. Department of State's Human Rights Report for Colombia, and the BIA addressed the key pieces of evidence upon which the IJ based his conclusions.

## 2. Past Persecution

The record also supports the conclusions of the IJ and BIA that Nunez-Castro failed to establish past persecution. *See* INA § 101(a)(42)(A). To establish asylum based on past persecution, the applicant must prove (1) that he was persecuted (2) on account of a protected ground. *Carrizo*, 652 F.3d at 1331. "Not

all exceptional treatment constitutes persecution.  Rather, persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and … mere harassment does not amount to persecution." *Diallo*, 596 F.3d at 1333 (internal quotation marks omitted).  In determining whether one has suffered past persecution, a court must consider the cumulative impact of the alleged incidents of persecution.  *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007) (per curiam).  Accordingly, establishing past persecution typically requires, e.g., numerous threats or attacks, or a credible death threat by one with the immediate ability to act on it.  *See, e.g.*, *Diallo*, 596 F.3d at 1333 (listing examples of past persecution).

Nunez-Castro's persecution claim is based entirely on: (1) a shooting in which—although he was injured—he has not shown that he was a target; and (2) one or two threatening phone calls he received on unspecified dates from unidentified members of an opposition group.  While he may have been shot, he cannot demonstrate that he was shot *because* of his political beliefs.  It is equally plausible that Nunez-Castro was simply in the wrong place at the wrong time.  At the very least, it cannot be said that these facts compel a reversal.  *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (holding that "findings of fact made by the [IJ] may be reversed by this court only when the record compels a

11

reversal") (internal alterations and quotation marks omitted)).  Nunez-Castro has

not met his burden of establishing the "extreme" threshold of persecution.  *See,*

*e.g.*, *Diallo*, 596 F.3d at 1333.

### 3. Future Persecution

Likewise, Nunez-Castro has not established a threat of future persecution.

"To establish a well-founded fear of future persecution, an alien must show that

there is a reasonable possibility of suffering such persecution if he or she were to

return to that country."  *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200 (11th Cir.

2009) (per curiam).  "The alien must establish a fear that is both subjectively

genuine and objectively reasonable."  *Id.* (internal quotation marks omitted).  "The

subjective component is generally satisfied by the applicant's credible testimony

that he or she genuinely fears persecution."  *Id.* (internal quotation marks omitted).

The objective prong can be fulfilled either by establishing past persecution or good

reason to fear future persecution.  *Id.*  An alien must establish a nexus between a

statutorily protected ground and the feared persecution.  He can do so by

presenting specific, detailed facts showing either: (1) a good reason to fear that he

or she will be singled out for persecution on account of such ground; or (2) a

pattern or practice of persecution of a group of which he is a member.  *See id.*; *see*

*also* 8 C.F.R. § 208.13(b)(2)(C)(iii).  If the applicant makes an initial showing of a

12

fear of future persecution, the government may rebut the applicant's evidence by demonstrating, based upon a preponderance of the evidence, that the applicant could avoid future persecution by relocating within the country if, under all the circumstances, it would be reasonable to expect the applicant to do so.  8 C.F.R. § 208.13(b)(1)(i); *Diallo*, 596 F.3d at 1333–34.

Although stated otherwise in his interview, Nunez-Castro testified that he received no threats after he relocated to Bogotá, and that the group to which he belonged only operated in the department of Valle, not throughout Colombia.  He failed to rebut evidence that former members of the now-disbanded opposition had formed smaller groups that lacked organization and influence, and he did not submit any evidence that would support the conclusion that he could not relocate to another part of Colombia.  *See* 8 C.F.R. § 208.13(b)(2)(C)(iii); *Mehmeti*, 572 F.3d at 1200.  Here, Nunez-Castro cannot demonstrate a credible threat of future persecution.

*B. Due Process Violations*

"[W]hen the IJ or BIA has not made findings of fact or has not applied the law to those facts, appellate courts should remand to allow the IJ to make such determinations in the first instance."  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1224, 1236 (11th Cir. 2007).  However, in "rare circumstances," where the

13

undecided issue is legal, not factual, and requires an objective, procedural inquiry, we may decide an issue left unresolved by the BIA. *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329–30 (11th Cir. 2007).

We review constitutional challenges de novo. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (per curiam). The Fifth Amendment entitles petitioners in removal proceedings to due process of law. *Id.* "Due process requires that aliens be given notice and an opportunity to be heard in their removal proceedings, as well as a full and fair removal hearing." *Id.* "To establish a due process violation, the petitioner must show that []he was deprived of liberty without due process of law and that the purported errors caused [him] substantial prejudice." *Id.* Deprivation of the ability to present evidence on one's behalf in a removal proceeding may, under certain circumstances, constitute a due process violation. *Frech v. U.S. Att'y Gen.*, 491 F.3d 1277, 1282 (11th Cir. 2007). "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." *Lapaix*, 605 F.3d at 1143.

An alien has a statutory right to retained counsel in removal proceedings. 8 U.S.C. §§ 1229a(b)(4)(a), 1362. While there is no Sixth Amendment right to counsel in removal proceedings, an alien has a Fifth Amendment due process right

14

to effective assistance of counsel where counsel has been obtained, as part of his right to a fundamentally fair hearing. *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1273 (11th Cir. 2004) (per curiam).

Here, the BIA did not address Nunez-Castro's claim that the IJ violated his due process rights. However, because this issue presents a legal question that requires no additional fact finding, it is within our discretion to address Nunez-Castro's due process claim on the merits. *See Calle*, 504 F.3d at 1330.

Nunez-Castro's claims regarding the IJ's improper weighing of evidence and failure to specifically address certain evidence—which are essentially challenges to the IJ's ultimate conclusions—do not implicate a denial of notice or a right to be heard, and therefore raise no due process concerns. *See Lapaix*, 605 F.3d at 1143. Nunez-Castro's brief references to the BIA's failure to fully review the record and a "Sixth Amendment" claim are insufficient to preserve any such claims before this court. *See Carrizo*, 652 F.3d at 1330 n.1. Moreover, claims regarding the right to counsel in removal proceedings are analyzed under the Fifth Amendment Due Process Clause and not under the Sixth Amendment. *Dakane*, 399 F.3d at 1273.

Nunez-Castro's remaining due process claims also fail. Although it would have been prudent for the IJ to permit Nunez-Castro an opportunity to respond to

15

the credibility challenges that arose after his counsel had completed examination and argument, Nunez-Castro cannot establish a due process violation because he cannot show substantial prejudice resulting from the IJ's actions. *See Lapaix*, 605 F.3d at 1143. As discussed above, Nunez-Castro failed to establish that he is entitled to asylum, regardless of his credibility. Accordingly, even if he had been given an opportunity to rehabilitate his credibility, this would not have changed the outcome of the proceeding. *See id.*

**PETITION DISMISSED IN PART AND DENIED IN PART.**